CITY OF PEARLAND, Appellant,

v.

RELIANT ENERGY ENTEX, A Division of Reliant Energy Resources Corp. (f/k/a Entex, A Division of Noram Energy Corp.) and Reliant Energy Resources Corp. (f/k/a Noram Energy Corp.), Appellees.

No. 14–00–00357–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Oct. 25, 2001.

Publication Ordered Nov. 15, 2001.

W. Mark Lanier, Houston, Donald M. Hunt, Lubbock, John R. Gilbert, Angleton, for appellant.

Byron Daryl Bristow, Macey Reasoner Stokes, Houston, James W. Bradford, Angleton, Robert J. Hearon, Austin, Amy Douthitt Maddux, Houston, for appellees.

Panel consists of ANDERSON, HUDSON, and SEYMORE, JJ.

## OPINION

J. HARVEY HUDSON, Justice.

This is a double appeal from an order granting a partial summary judgment in a declaratory judgment and breach of contract action brought by the City of Pearland against Reliant Energy Entex and Reliant Energy Resources Corp. [hereinafter jointly referred to as "Entex"] seeking compensation for the alleged underpayment of street rental franchise fees. The sole issue in this appeal is the proper construction of Pearland Ordinance No. 508. We affirm the trial court's grant of Entex's motion for partial summary judgment, and we reverse the trial court's partial grant of Pearland's motion for partial summary judgment and render judgment in favor of Entex.

On May 27, 1986, Pearland granted Entex a street franchise allowing Entex the use of Pearland's rights of way to distrib-

ute natural gas to Entex's customers inside the city limits in exchange for a payment of a percentage of Entex's gross receipts from the sale of natural gas. The ordinance provides in pertinent part:

> In consideration of the rights and privileges herein granted, [Entex] agrees to pay to [Pearland] annually during the continuance of this franchise a sum of money equal to two percent (2%) of the gross receipts for the preceding year received by [Entex] after the effective date of this franchise for the sale of gas to residential, commercial, and industrial customers, within the corporate limits of [Pearland]. Payments hereunder shall be calculated on the basis of gross receipts from the sale of gas on all gas sold to residential, commercial, and industrial customers, within the corporate limits of [Pearland].

Each year, Entex calculated its annual franchise fee on the basis of its "gross receipts" from the sale of natural gas. Entex did not include within the calculation of its "gross receipts" the sales tax collected from its customers.

In 1997, Pearland, and other similarly situated municipalities, brought a class action suit against Entex seeking a declaratory judgment to determine the legal construction of their franchise fee agreements, an audit of Entex, and breach of contract damages if the court determined that Entex underpaid the cities. The trial court certified the class and appointed Pearland as the class representative. Following the class certification, both sides moved for partial summary judgment. Entex claimed that sales taxes belong to the state and do not constitute "receipts" from the sale of natural gas. Pearland, however, reasoned that sales taxes are calculated on the sale of gas and, thus, are part of the gross receipts. Pearland also observed that while Entex collects sales taxes in its

monthly billings, it transfers the money to the state on a quarterly basis. In addition, to the interest earned on these tax monies, Entex is also authorized by statute to deduct a small collection fee to reimburse it for the expenses incurred in collecting the tax. Thus, Pearland argued that if sales tax does not constitute part of the gross receipts from the sale of gas, certainly the statutory collection fee and time value on the collected tax monies is revenue paid to Entex from the sale of gas that should be included within its gross receipts.

The trial court granted in part Pearland's partial motion for summary judgment and granted one of Entex's two partial motions for summary judgment. In its order, the trial court declared that sales taxes are collected for the benefit of the state and are not, as a matter of law, a part of Entex's "gross receipts" as the term is used in Pearland's street rental franchise ordinance. The court, however, held that Entex owes franchise fees on the statutory collection fees it receives from the state for collecting the tax and on the time value of the tax from the time the money is collected until it is delivered to the state. Pearland and Entex then moved to sever Pearland's claims for the year 1998 from the balance of its other claims and from the claims of the other cities. The trial court granted the motion to sever and rendered final judgment against Entex for $39.59, representing two percent of the 1998 collection fees and interest earned.

On appeal, both parties challenge the trial court's grant of partial summary judgment and its construction of the ordinance. In its appeal, Pearland contends that the plain meaning of the term "gross receipts," as it is used in the ordinance, includes all monies received by Entex without any deduction for the sales taxes received. Entex, conversely, asserts that the plain language of the ordinance dic-

tates that sales tax, statutory collection fees paid to Entex by the State for the cost associated with its collection of the sales taxes, and the time value of sales taxes held are not "gross receipts ... *for the sale of gas*" on which it must pay a franchise fee.

■■■ The rules governing the construction of state statutes also control our construction of municipal ordinances. *Mills v. Brown,* 159 Tex. 110, 114, 316 S.W.2d 720, 723 (1958). The proper construction of an ordinance is a question of law. *Johnson v. City of Fort Worth,* 774 S.W.2d 653, 656 (Tex.1989) (per curiam). We are required to discern and give effect to the intent of the enacting body. *Sorokolit v. Rhodes,* 889 S.W.2d 239, 241 (Tex. 1994). To achieve this goal, we must first attempt to discern that intent must come from the plain language of the ordinance. *Id.* Our obligation, however, to enforce the plain language of the ordinance does not authorize us to employ a "bloodless literalism in which text is viewed as if it had no context." *West Anderson Plaza v. Feyznia,* 876 S.W.2d 528, 532 (Tex.App.—Austin 1994, no writ). We are required to consider the context and the consequences that would follow from a particular interpretation, and we must avoid interpretations that would produce absurd results or render other language mere surplusage. *City of Amarillo v. Martin,* 971 S.W.2d 426, 430 (Tex.1998); *Sharp v. House of Lloyd, Inc.,* 815 S.W.2d 245, 249 (Tex. 1991).

The language of Pearland Ordinance 508 is unambiguous. The pertinent portion of the ordinance requires Entex, in exchange for the street rental franchise, to pay Pearland 2% of its gross receipts from the preceding year for the sale of gas to residential, commercial, and industrial customers. The ordinance does not require Entex to pay Pearland two percent of all *monies* received from its residential, commercial, and industrial customers; rather, the ordinance requires Entex to pay 2% of its *gross receipts "from the sale of gas."* Thus, any monies received by Entex from its customers for any purpose other than "the sale of gas" are not included within Entex's obligation.

■■■ As a seller of a taxable item, Entex is legally obligated to collect sales taxes from its purchasers. *Davis v. State,* 904 S.W.2d 946, 952 (Tex.App.—Austin 1995, no pet.). When collecting sales tax, Entex acts as an involuntary agent of the state and that role is separate from its role as a public utility selling gas to its customers. *Serna v. H.E. Butt Grocery Co.,* 21 S.W.3d 330, 333 (Tex.App.—San Antonio 1999, no pet.). Sales tax monies become state funds at the moment of collection, and Entex merely holds these funds in trust until they are remitted to the state. *Davis,* 904 S.W.2d at 953. While sales tax is calculated on the amount of the sale, it forms no part of the consideration paid by the customer in exchange for natural gas. Thus, we find the phrase "gross receipts ... for the sale of gas" does not include sales tax.

■■■ Moreover, we also find the statutory collection fee does not constitute "gross receipts ... for the sale of gas." The collection fee paid to Entex by the state is payment for the collection of taxes, not payment for the sale of gas.

■■■ We further find the time value or interest on the tax monies forms no part of the "gross receipt ... for the sale of gas." As we have previously observed, sales taxes belong to the state from the moment of collection. It is well settled in Texas that "interest follows principal." *Phillips v. Washington Legal Foundation,* 524 U.S. 156, 165–66, 118 S.Ct. 1925, 141 L.Ed.2d 174 (1998) (citing *Sellers v. Harris County,* 483 S.W.2d 242, 243 (Tex.1972)). Interest is incident of the principal and belongs to the ultimate owner of the prin-

cipal. *Id.* Thus, while the state may hypothetically be entitled to the interest earned on the sales tax proceeds prior to its delivery, Pearland has no cognizable claim.

When, as here, both parties have moved for summary judgment, we may reverse the trial court's judgment and render such judgment that the trial court should have rendered, including rendering judgment for the other movant. *Alameda v. Transamerican Natural Gas,* 950 S.W.2d 93, 96 (Tex.App.—Houston [14th Dist] 1997, writ denied). Accordingly, we affirm the trial court's grant of Entex's partial motion for summary judgment, we reverse the trial court's grant in part of Pearland's partial motion for summary judgment, and we render judgment in favor of Entex declaring that Pearland is not entitled to a payment of a franchise fee on: (1) the statutory collection fees that the state pays Entex; and (2) the interest accrued on the sales taxes from the time Entex collects the taxes until the time it delivers the taxes to the State.