CITY OF LAREDO, Appellant,

v.

Eduardo VILLARREAL and Rosa Adriana Villarreal, Appellees.

No. 04–01–00639–CV.

Court of Appeals of Texas, San Antonio.

May 8, 2002.

Albert Lopez, Lopez & Smith, P.C., San Antonio, Jaime L. Flores, City Attorney, Jerry Bruce Cain, Assistant City Attorney, Laredo, for Appellant.

Francisco J. Saldana, Jr., Law Offices of Francisco J. Saldana, Jr., Laredo, for Appellees.

Sitting: ALMA L. LÓPEZ, Justice (concurring in the judgment only), SARAH B. DUNCAN, Justice, and KAREN ANGELINI, Justice.

Opinion by KAREN ANGELINI, Justice.

The City of Laredo ("City") appeals the trial court's judgment, which was granted in favor of Eduardo and Rosa Adriana Villarreal. The Villarreals constructed a communications tower on their property in violation of the City's zoning ordinances. They requested and received a nontransferable Conditional Use Permit ("CUP"). Because they could not meet one of the CUP's conditions, they decided to build a new tower in place of the old one. The trial court construed the CUP to permit a new tower. The City maintains that by building a new tower, the Villarreals are "transferring" the CUP. We agree and reverse the trial court's judgment.

## BACKGROUND

The Villarreals use the communications tower in their business. Their lot was zoned B–1, a limited commercial zone that did not permit communications towers. After being informed that they were in

violation of the City's zoning ordinances, the Villarreals petitioned to have the zoning changed from B–1 to B–4, a zone that does permit communications towers. The City Council denied their request, but did grant them a CUP under Ordinance No. 96–0–12. The CUP authorized the communications tower if the Villarreals fulfilled certain conditions:

1. The height of the tower and antenna is not to exceed two hundred feet (200').

2. The applicant provides liability insurance covering unforeseen damages to adjacent property owners.

3. The applicant's plans are sealed by a safety engineer.

4. The applicant provides a safety inspection report every two years for the life of the C.U.P. [Conditional Use Permit].

5. *The Conditional Use Permit is not transferable.*

6. The applicant will provide evidence of compliance with all applicable licensing and permit requirements by the F.A.A. and F.C.C. on an annual basis.

(emphasis added).

Because the tower had too many antennas, the Villarreals were unable to get the plans of the existing communications tower sealed by a safety engineer. So, they decided to replace the existing tower with a new tower that would meet all of the CUP's conditions. Eduardo sent a letter to the City, asking whether he needed a new permit or whether he could just rely on the old one. Because the CUP is "not transferable," Pete Morales, former assistant city planner, interpreted the CUP not to allow a new tower. He instructed Eduardo to file an application for a new permit. However, since the Villarreals had obtained their CUP, the City had passed a new ordinance. Those wishing to erect commercial communications towers in areas not zoned for such towers had to apply for a Special Use Permit ("SUP"). In an attempt to prevent communications towers from falling on neighboring business and homes, the City created new setback requirements for holders of SUPs. These new setback requirements, however, did not apply retrospectively to holders of CUPs. Because the Villarreals' new tower would be too tall and their lot too small to meet these setback requirements, the Villarreals did not qualify for a SUP. So, they decided to withdraw their application for a SUP and rely instead on their CUP.

The City, however, prohibited the Villarreals from relying on their CUP. Because "the erection of a new tower constitutes a transfer of the [CUP]," the City explained that the Villarreals needed its approval to build a new tower.[1] The Villarreals filed a suit for declaratory judgment, asking the trial court to determine whether they could construct a new tower to bring themselves in compliance with the CUP. After a nonjury trial, the trial court found that the CUP allowed the Villarreals to replace the old tower with a new one. Specifically, the trial court held that (1) the CUP's requirement that it be nontransferable means that the CUP cannot be transferred to someone other than the Villarreals; (2) the replacement of the existing tower will serve the purpose of the CUP; and (3) the City's administrative interpretation was an "unreasonable construction of the term 'transfer.'"

---

1. Section 24.62.6 of Ordinance No. 93–0–177 requires the approval of City Council to transfer a CUP.

## STANDARD OF REVIEW

■ The rules that apply to the construction of statutes apply as well to the construction of municipal ordinances. *Wende v. Board of Adjustment,* 27 S.W.3d 162, 170 (Tex.App.-San Antonio 2000, pet. granted). The proper construction of an ordinance is a question of law. *City of Pearland v. Reliant Energy Entex,* 62 S.W.3d 253, 256 (Tex.App.-Houston [14th Dist.] 2001, pet. filed); *see Johnson v. City of Fort Worth,* 774 S.W.2d 653, 656 (Tex.1989) (per curiam). The cardinal rule of statutory construction is to discern and give effect to the intent of the enacting body. *Wende,* 27 S.W.3d at 170; *Tex. River Barges v. City of San Antonio,* 21 S.W.3d 347, 353 (Tex.App.-San Antonio 2000, pet. denied). To achieve this goal, we must first attempt to discern that intent must come from the plain language of the ordinance, *Reliant Energy,* 62 S.W.3d at 256, considering the ordinance as a whole, *Tex. River Barges,* 21 S.W.3d at 353. To enforce the plain language of the ordinance does not authorize us to employ a "bloodless literalism in which text is viewed as if it had no context." *Wende,* 27 S.W.3d at 170 (quoting *West Anderson Plaza v. Feyznia,* 876 S.W.2d 528, 532 (Tex.App.-Austin 1994, no writ)). We are required to consider the context and the consequences that would follow from a particular interpretation, and we must avoid interpretations that would produce absurd results or render other language mere surplusage. *Wende,* 27 S.W.3d at 170. Construction of a statute by the administrative agency charged with its enforcement is entitled to serious consideration, so long as the construction is reasonable and does not contradict the plain language of the statute. *Tex. River Barges,* 21 S.W.3d at 353.

## "TRANSFERABLE"

■ The Villarreals argue that their interpretation is supported by the plain language of the CUP, because section 1 discusses *a tower* in the future: "A Conditional Use Permit is granted for a 200 foot communications tower to be located on Lot 4, Block 178, Western Division, located at 1007 San Dario Ave." Likewise, section 2(1) states that the "height of the tower and antenna is not to exceed two hundred feet." The caption of the ordinance, however, authorizes the issuance of the CUP for *the tower:* "Authorizing the issuance of a conditional use permit for sales/service of pagers and two-way radios as well as the 200 foot communications tower which receives and transmits signals, on Lot 4, Block 178, Western Division, Located at 1007 San Dario Ave."

The Villarreals also point to the testimony of former Assistant City Planner Pete Morales for support. Morales, however, gave conflicting testimony. On the one hand, he testified that non-transferability means that the holder of a CUP cannot sell the CUP to someone else. On the other hand, Morales testified that it was not the City's intention for a new antenna to be erected. According to Morales, the City was only attempting to get the existing tower into compliance.

The City argues that as the administrative agency charged with enforcing the ordinance, its construction of the ordinance is entitled to serious consideration, so long as the construction is reasonable and does not contradict the plain language of the statute. *See Tex. River Barges,* 21 S.W.3d at 353. The purpose of zoning is to control the use of the land within the City. The City's construction of the ordinance serves that underlying purpose and is, therefore, reasonable. And, it does not contradict the plain language of the ordinance. The Villarreals' construction, however, would lead to absurd results. *See Wende,* 27 S.W.3d at 170. Under their construction,

a person could obtain a CUP for a current structure and then build another structure without first receiving permission. Such an interpretation would override the City's safety requirements. The City could not have intended for the Villarreals to be able to build a new tower without first receiving permission. The trial court, therefore, erred by holding that the Villarreals could build a new tower without violating the CUP.

### CONCLUSION

Because the City's construction of the ordinance was reasonable and not in contradiction to the plain meaning of the ordinance and because the Villarreals' construction would lead to absurd results, we reverse the judgment of the trial court and render judgment in favor of the City of Laredo.