IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 16, 2008

Charles R. Fulbruge III
Clerk

No. 07-40465
Summary Calendar

L D JONES

                            Plaintiff-Appellant

V.

CITY OF PALESTINE

                            Defendant-Appellee

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 6:06-CV-299

Before KING, DAVIS and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant L. D. Jones ("Jones"), on behalf of a putative class of similarly situated individuals, brought this action to challenge the fee charged by Defendant-Appellee City of Palestine, Texas ("the City") for residential wastewater between September 12, 1994 and October 1, 2005. Jones alleged that the City passed an ordinance that clearly established a flat-rate charge. The City, however, argued that the ordinance was ambiguous and that extrinsic

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

evidence revealed a legislative intent to establish a volume-rate charge. The district court agreed with the City and granted summary judgment in its favor. We AFFIRM.

## I. FACTS AND PROCEEDINGS[1]

The City, a home-rule municipality organized under the laws of State of Texas, provides water and wastewater services to its residents at rates promulgated by ordinance. Jones, a resident of the City, is a water and wastewater customer. Wastewater is billed separately from water. With regard to water rates, the ordinance provides varying rates depending upon connection size for the first 2000 gallons and a rate of $2.12 "after 2,000 gallons, per 1,000." PALESTINE, TEX., CODE OF ORDINANCES § 98.90. For residential wastewater charges, the ordinance states:

> (1) Residential. Residential users shall pay the charge according to the following:
>
> | | | |
> |---|---|---|
> | a. | First 2,000 gallons, minimum charge | $12.00 |
> | b. | Over 2,000 gallons | $3.40 |
>
> The rate charged for residential wastewater service during summer months will be based on the average of December-March, if actual consumption is less, the consumer will be charged the actual charge.

Id. § 98.91(1).[2] When the City established these wastewater rates on September 12, 1994, it also adopted a "Customer Service Policy" resolution, which stated that the $3.40 charge for wastewater over 2000 gallons would be

---

[1] The parties agree that there is no factual dispute.

[2] Ordinance No. 0-26-94, which was passed on September 12, 1994, is the original ordinance for this section and was codified in this section. The City, however, also passed a series of subsequent ordinances, which contained the same language for § 98.91(1), but modified other subsections. These subsequent ordinances referred to by Jones include: Ordinance No. 0-27-96, adopted on October 14, 1996; Ordinance No. 0-24-98, adopted on September 28, 1998; Ordinance No. 0-23-02, adopted on October 23, 2002; and Ordinance No. 0-36-03, adopted on November 24, 2003.

charged "per thousand." Likewise, the City's budget for 1996-97 expressly provided that the $3.40 charge for wastewater over 2000 gallons was calculated per thousand, and subsequent budgets used this volume rate for revenue projections. On September 1, 2005, the City amended the ordinance, effective October 1, 2005, to state "[f]irst 3,000 gallons, minimum charge . . . 12.00 base charge" and "[o]ver 3,000 gallons . . . 3.40 per 1,000."

On June 15, 2006, Jones filed this action in the 3rd Judicial District Court in Anderson County, Texas, which the City removed to federal district court on July 5, 2006 based on federal question jurisdiction.[3] Jones primarily challenges the fee charged to residents by the City for wastewater between September 12, 1994 and October 1, 2005. On August 18, 2006, Jones moved for partial summary judgment. On September 29, 2006, the City also moved for summary judgment. The parties filed the appropriate responses and replies. On January 31, 2007, the district court denied Jones's motion, granted the City's motion, and entered final judgment in favor of the City. Jones appeals.

## II. STANDARD OF REVIEW

"We review a district court's grant of summary judgment de novo." N.W. Enters. Inc. v. City of Houston, 352 F.3d 162, 172 (5th Cir. 2003). We also review questions of statutory interpretation de novo. See Rogers v. City of San Antonio, 392 F.3d 758, 761 (5th Cir. 2004).

## III. DISCUSSION

This appeal turns on the interpretation of the City's residential wastewater ordinance. See PALESTINE, TEX., CODE OF ORDINANCES § 98.91(1). Jones argues that the plain language of the ordinance established a flat rate, which by its terms capped monthly charges at $15.40 per customer ($12.00 for the first 2000 gallons and $3.40 for any amount over 2000 gallons). Based on

---

[3] In his First Amended Original Petition, Jones asserted a takings claim under the United States Constitution, which served as the City's basis for removal.

this language, Jones alleges that the City unlawfully charged residents by a volume rate ($12.00 for the first 2000 gallons and $3.40 per thousand for any amount over 2000 gallons). Jones argues that if the City wanted to charge a volume rate for residential wastewater over 2000 gallons, it could have explicitly stated so in the ordinance by adding "per thousand" after "$3.40." The City counters that it inadvertently omitted the "per thousand" language from § 98-91(1) and rejects Jones's proposed interpretation, arguing that it would lead to absurd results——a capped rate would not allow the City to cover its expenses for operating the residential wastewater collection and treatment system and collect sufficient revenues to pay on its bonds related to the system. The City also argues that the ordinance was ambiguous when considered as a whole and that extrinsic evidence——the City's construction and billing practices, "Customer Service Policy" resolution, budget projections, and financial needs for bond payments——reveals the City's intent to charge residents for wastewater by a volume rate.

Under Texas law, "[t]he goal of statutory construction is to give effect to the intent of the" enacting body. Monsanto Co. v. Cornerstones Mun. Util. Dist., 865 S.W.2d 937, 939 (Tex. 1993). "To achieve this goal, we must first attempt to discern that intent . . . from the plain language of the ordinance, considering the ordinance as a whole." City of Laredo v. Villarreal, 81 S.W.3d 865, 868 (Tex. App. 2002) (internal citations omitted); see also City of Coppell v. Gen. Homes Corp., 763 S.W.2d 448, 454 (stating that the wording of the entire ordinance, not just one word or phrase, must be examined to determine the underlying intent of the enacting body). "If the meaning of the statutory language is unambiguous, we adopt . . . the interpretation supported by the plain meaning of the provision's words and terms." Fitzgerald v. Advanced Spine Fixation Sys., Inc., 996 S.W.2d 864, 865 (Tex. 1999). "Further, if a statute is unambiguous, rules of construction

or other extrinsic aids cannot be used to create ambiguity." Id. at 865–66. Nonetheless,

> [t]o enforce the plain language of the ordinance does not authorize us to employ a bloodless literalism in which text is viewed as if it had no context. We are required to consider the context and the consequences that would follow from a particular interpretation, and we must avoid interpretations that would produce absurd results or render other language mere surplusage. Construction of a statute by the administrative agency charged with its enforcement is entitled to serious consideration, so long as the construction is reasonable and does not contradict the plain language of the statute.

Villarreal, 81 S.W.3d at 868 (internal quotations and citations omitted).

Regardless of ambiguity, courts can also

> consider other factors to determine the Legislature's intent, including: the object sought to be obtained; the circumstances of the statute's enactment; the legislative history; the common law or former statutory provisions, including laws on the same or similar subjects; the consequences of a particular construction; administrative construction of the statute; and the title, preamble, and emergency provision.

Helena Chem. Co. v. Wilkins, 47 S.W.3d 486, 493 (Tex. 2001) (citing TEX. GOV'T CODE ANN. § 311.023). However, where an otherwise clear statutory provision, in the context of the remainder of the statute, is ambiguous, a reviewing court "must look behind the words [of the statute] to determine the true purpose of the provision." Bridgestone/Firestone, Inc. v. Glyn-Jones, 878 S.W.2d 132, 133 (Tex. 1994).

We first turn to the language of the ordinance. It specifically provides that residential wastewater will be charged as follows: "[f]irst 2,000 gallons, minimum charge . . . $12.00" and "[o]ver 2,000 gallons . . . $3.40." Importantly, the same subsection of this ordinance contains a "winter-averaging" provision, which states that "the rate charged for residential wastewater service during summer months will be based on the average of December-March, if actual consumption is less, the consumer will be charged the actual charge." This

provision anticipates that water usage during summer months will exceed water usage during winter months and is written to avoid unfair increased wastewater charges during winter months.[4] Considering the ordinance as a whole, we agree with the district court that the presence of the "winter-averaging" provision creates an ambiguity. As the district court found, if the ordinance intended to provide a cap on residential wastewater rates, it would be completely unnecessary to provide for winter averaging; such language would be mere surplusage. See Helena Chem. Co., 47 S.W.3d at 493 (stating that courts "should not give one provision a meaning out of harmony or inconsistent with other provisions, although it might be susceptible to such a construction standing alone"). Therefore, we hold that the ordinance is ambiguous, which renders the legislative intent unclear.

To resolve this ambiguity and give effect to the intent of the City, we must apply the rules of construction and utilize appropriate extrinsic evidence. See Mills v. Brown, 316 S.W.2d 720, 723 (Tex. 1958) (stating that courts construe city ordinances by the same rules of construction as apply to statutes). Here, the City has presented ample summary judgment evidence to demonstrate that it intended to charge residents by a volume rate for wastewater amounts over 2000 gallons. First, on the same date that the subject ordinance was passed, the City adopted a "Customer Service Policy" resolution that set forth the rate on a volume-per-thousand basis rather than a flat basis. Second, the City adopted its budget for 1996-97, which expressly stated that the rate for residential wastewater was $3.40 per 1000 gallons for amounts over 2000 gallons, and

---

[4] Wastewater rates are based on water consumption. The "winter-averaging" provision recognizes that during summer months, several uses of water––lawn-watering, swimming pools, and car washes––inflate water consumption but place no additional burden on wastewater. To avoid extremely high wastewater charges for residential customers during the summer, the City charges for wastewater based on the average of the winter months. Without "winter averaging," some residents would have summer wastewater charges in excess of $100.

subsequent budgets included revenue projections based upon that volume rate. Third, the City established that a monthly flat-rate charge, capped at $15.40 per customer, would not produce adequate revenue to pay for the expenses of the wastewater treatment and collection system and to repay bonds that have been acquired for improvement of that system. The record shows that during the time period at issue, residential customers were consistently charged $3.40 per thousand gallons over the initial 2000 gallons and there is no evidence that anyone ever complained about the way the City calculated the charges. Furthermore, Jones makes no contention that the City incorrectly administered the volume rate. Therefore, we agree with the district court that, based on this extrinsic evidence, the primary intention of the City's ordinance was to charge for residential wastewater by a volume rate. Such an interpretation is consistent with the intent of the City and avoids "absurd results." Accordingly, we hold that the ordinance should be construed to charge $3.40 per thousand gallons after the initial 2000 gallons.

## IV. CONCLUSION

The judgment of the district court is AFFIRMED.