**Affirmed and Majority and Dissenting Opinions filed October 12, 2021.**



In The

# Fourteenth Court of Appeals

### NO. 14-19-00959-CV

## BRUCE R. HOTZE, Appellant

## V.

## SYLVESTER TURNER, MAYOR, AND THE CITY OF HOUSTON, Appellees

**On Appeal from the 333rd District Court
Harris County, Texas
Trial Court Cause No. 2014-19507**

## MAJORITY OPINION

This dispute stems from two amendments to the Houston City Charter, both of which prescribed certain limitations on the City's revenue collection. In 2014, Appellant Bruce R. Hotze sued Sylvester Turner in his official capacity as Mayor of the City of Houston and the City of Houston (together, "Appellees") to enforce one of those amendments.

The parties filed cross-motions for summary judgment; the trial court

granted in part and denied in part Appellees' summary judgment motion and denied Hotze's motion. The case proceeded to a bench trial and the trial court signed a judgment for Appellees. Hotze appealed and challenges the trial court's summary judgment order. Appellees filed a cross-appeal contingent on this court sustaining any of the issues raised in Hotze's appeal. For the reasons below, we affirm the trial court's summary judgment.

## BACKGROUND

### Propositions 1 and 2

In 2004, two potential amendments to the Houston City Charter were proposed to limit increases in sources of City revenue: Propositions 1 and 2. The text of both Propositions was included in full in "City of Houston Ordinance No. 2004-887" (the "Election Ordinance"). The Election Ordinance ordered a special election to be held on November 2, 2004, to submit Propositions 1 and 2 to a vote.

Proposition 1 was placed on the ballot pursuant to the City's own motion. Addressing "Limits on Annual Increases in City Property Taxes and Utility Rates", Proposition 1 imposed a limit on property taxes and water and sewer rates by requiring that the Houston City Council obtain voter approval before increasing (1) property tax revenues above a limit measured by the lesser of 4.5% or the cumulative combined rates of inflation and population growth, or (2) water and sewer rates above the cumulative combined rates of inflation and population growth. Aside from these restrictions, Proposition 1 permitted the City to retain "full authority to assess and collect any and all revenues of the city without limitation."

Following the quoted text of Proposition 1, the Election Ordinance included a primacy clause stating:

2

If another proposition for a Charter amendment relating to limitations on increases in City revenues is approved at the same election at which this proposition is also approved, and if this proposition receives the higher number of favorable votes, then this proposition shall prevail and the other shall not become effective.

In contrast to Proposition 1, Proposition 2 resulted from a citizen-initiated referendum petition. Addressing "Limits on all Combined City Revenues", Proposition 2 required the City to obtain voter approval before it could increase total revenues from all sources by more than the combined rates of inflation and population.

In the November 2004 election, Propositions 1 and 2 each passed with a majority of the votes cast on the particular proposition. Proposition 1 received more favorable votes than Proposition 2.

The results of the election were declared in "City of Houston Ordinance No. 2005-568 (the "Adoption Ordinance"). The Adoption Ordinance stated that Propositions 1 and 2 "were approved by a majority of the qualified voters voting in the Election and are adopted, with Proposition 1 receiving a higher number of votes than Proposition 2." The Adoption Ordinance further stated that Proposition 1 was legally binding and that Proposition 2 would not be enforced. This conclusion rested on two bases: (1) Proposition 1's primacy clause, and (2) article IX, section 19 of the Houston City Charter which states, in relevant part:

at any election for the adoption of amendments if the provisions of two or more proposed amendments approved at said election are inconsistent the amendment receiving the highest number of votes shall prevail.

***The Underlying Proceeding***

In April 2014, Hotze filed an original petition asserting claims against

3

Appellees.[1]   In Hotze's second amended petition, he requested the following declaratory judgments regarding the interplay between Propositions 1 and 2:

- Both Propositions 1 and 2 are valid as a matter of law.

- Proposition 1's primacy clause "was never included in the actual text of Proposition 1 and was never voted on or passed by the electorate."

- Alternatively, if the trial court concludes that the primacy clause is a valid part of Proposition 1, then "Proposition 1 is unconstitutional because it violates Tex. Const. art. XI § 5 and is illegal because it violates Section 9.005(a) of the Local Government Code."

- Propositions 1 and 2 are not inconsistent.

- Alternatively, if the trial court concludes Propositions 1 and 2 are inconsistent, that either Proposition 1 or article IX, section 19 of the Houston City Charter is unconstitutional.

- Alternatively, if the trial court concludes that neither Proposition 1 nor article IX, section 19 of the Houston City Charter is unconstitutional, the trial court "should reconcile the Propositions so that at the very least, the portions of both Propositions that the Court finds are not inconsistent can stand."

Hotze's second amended petition also alleged that Appellees have "passed annual budgets . . . which exceed the permissible caps contained in either Proposition 1 or Proposition 2 or both."   Hotze requested declaratory and injunctive relief with respect to these alleged budgetary violations.

Appellees filed a combined plea to the jurisdiction and a motion for summary judgment, which the trial court denied.  Appellees filed an interlocutory appeal from the denial of their plea to the jurisdiction.  *See Turner v. Robinson*, 534 S.W.3d 115, 118 (Tex. App.—Houston [14th Dist.] 2017, pet. denied).[2]  In

---

[1] Hotze was one of three plaintiffs that filed the original petition.  The other two plaintiffs are not parties to this appeal.

[2] In *Turner*, this court also provided a detailed overview of other litigation relating to Propositions 1 and 2.  *See Turner*, 534 S.W.3d at 120-22.

that appeal, we concluded that (1) Hotze, as a taxpayer, had standing to seek injunctive and declaratory relief, (2) Hotze pleaded a valid *ultra vires* claim against the Mayor, and (3) the City's sovereign immunity with respect to Hotze's declaratory judgment action was waived under the Uniform Declaratory Judgment Act. *See id*. at 124, 126, 127. We affirmed the trial court's denial of Appellees' plea to the jurisdiction. *Id*. at 127.

Back in the trial court, Appellees filed a "Supplemental Plea to the Jurisdiction/Motion for Summary Judgment and Motion for Reconsideration of this Court's May 2, 2016 Order Denying Defendants' Plea to the Jurisdiction and Motion for Summary Judgment." Hotze filed a traditional motion for summary judgment. *See* Tex. R. Civ. P. 166a(c).

On September 16, 2019, the trial court signed an order that (1) granted in part and denied in part the City's "Supplemental Plea to the Jurisdiction/Motion for Summary Judgment and Motion for Reconsideration", and (2) denied Hotze's traditional motion for summary judgment. The trial court's order also contains the following conclusions of law:

1.    [Hotze] has taxpayer standing;
2.    [Hotze] does not have standing under Proposition 2;
3.    Governmental immunity does not bar [Hotze's] suit;
4.    Proposition 2 is not effective because of Proposition 1's primacy clause; and
5.    Propositions 1 and 2 are not irreconcilably or substantively inconsistent and do not trigger Art. IX, § 19 of the City Charter.

The parties proceeded to a bench trial in October 2019; the only issue remaining for the trial court's determination was whether Appellees had complied with Proposition 1. The trial court signed a final judgment on October 29, 2019, concluding that (1) Appellees fully complied with Proposition 1 throughout the

5

relevant time period, and (2) Hotze was not entitled to an award of attorney's fees. Hotze appealed and Appellees filed a cross-appeal.

ANALYSIS

Asserting error in the trial court's September 16, 2019 summary judgment order, Hotze raises three issues challenging the trial court's conclusion that "Proposition 2 is not effective because of Proposition 1's primacy clause[.]" Specifically, Hotze asserts:

1. The primacy clause "was never included in Proposition 1."
2. Proposition 2 does not trigger Proposition 1's primacy clause.
3. Proposition 1's primacy clause conflicts with the Texas Constitution and state law.

Hotze also requests that we remand the case to permit the trial court to determine whether he is entitled to a recovery of attorney's fees.

In their cross-appeal, Appellees assert that the issues they raise merit consideration only if this court reverses the trial court's conclusion that Proposition 1's primacy clause renders Proposition 2 unenforceable.

For the reasons below, we overrule the issues Hotze raises on appeal. Because we do not revisit the trial court's conclusion of law regarding Proposition 1's primacy clause, we need not address the issues Appellees raise in their cross-appeal.

## I. Standard of Review

The parties' cross-motions for summary judgment presented a question of law regarding the effect of Proposition 1's primacy clause on Proposition 2. We review the trial court's conclusion of law on this point *de novo*. *Cook v. Nissimov*, 580 S.W.3d 745, 751 (Tex. App.—Houston [14th Dist.] 2019, pet. denied).

6

"When we review cross-motions for summary judgment, we consider both motions and render the judgment that the trial court should have rendered." *Coastal Liquids Transp., L.P. v. Harris Cty. Appraisal Dist.*, 46 S.W.3d 880, 884 (Tex. 2001). Each party bears the burden of establishing that it is entitled to judgment as a matter of law. *City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 356 (Tex. 2000).

## II.  Application

### A.  The Primacy Clause Was Included in Proposition 1.

Referring to the Election Ordinance, Hotze points out that the primacy clause was "not combined within the quoted portion" of Proposition 1 but instead was listed afterwards in a separate paragraph. This structure, Hotze argues, "means that the [primacy clause] was not intended and indeed was not part of the text of Proposition 1."

Hotze does not cite, and our research did not find, any case law or other authority to support his contention that quoted versus unquoted portions of a proposition as shown in the Election Ordinance determine those provisions' enforceability. Without any authority to support this construction, we will not adopt it here.

Moreover, the ultimate determination regarding Propositions 1 and 2 was reserved to the voters. *See* Tex. Const. art. XI, § 5 ("Cities having more than five thousand (5000) inhabitants may, by a majority vote of the qualified voters of said city, at an election held for that purpose, adopt or amend their charters."). When they cast their votes, "voters are presumed to be familiar with every measure on the ballot." *Dacus v. Parker*, 466 S.W.3d 820, 825 (Tex. 2015); *see also Dacus v. Parker*, 383 S.W.3d 557, 565 (Tex. App.—Houston [14th Dist.] 2012), *rev'd on other grounds*, 466 S.W.3d 820 (Tex. 2015) ("We instead presume that by the time

7

voters have entered the polling place, they already are familiar with the measure [on the ballot].").  This presumption is justified "because publication of the measures as required by law constitutes notice to the voters of its contents." *Dacus*, 383 S.W.3d at 565.

Included in their response to Hotze's summary judgment motion, Appellees filed an exhibit containing four Houston Chronicle newspaper articles published in the three months preceding the November 2004 election on Propositions 1 and 2.[3] These articles consistently described Propositions 1 and 2 as "competing charter amendments".  The August 26, 2004 article specifically stated that the Proposition "with the most votes will become law because they propose conflicting policies."[4] The October 30, 2004 article informed readers that "Houston residents will vote Tuesday on the two competing charter amendments that would limit city revenues by different means."[5]

As this evidence shows, newspaper articles published before the election stated that Propositions 1 and 2 were alternative proposals to limit city revenues.

---

[3] *See* Ron Nissimov*, Survey Weighs Propositions; Both Limit Revenues*, Houston Chronicle, Oct. 30, 2004, https://www.chron.com/news/politics/article/Survey-weighs-propositions-both-limit-revenues-1516633.php; *Revenue Caps:  Vote FOR Prop. No. 1, AGAINST Prop. No. 2*, Houston Chronicle, Oct. 6, 2004, https://www.chron.com/opinion/editorials/article/Revenue-caps-Vote-FOR-Prop-No-1-AGAINST-Prop-1961490.php;  Ron Nissimov, *City's Revenue Fight Going to the Nov. 2 Ballot*, Houston Chronicle, Aug. 26, 2004, https://www.chron.com/news/politics/article/City-s-revenue-fight-going-to-the-Nov-2-ballot-1969054.php; Kristen Mack & Ron Nissimov, *Debate on City Revenue Caps Kicks Off*, Houston Chronicle, Aug. 24, 2004, https://www.chron.com/news/houston-texas/article/Debate-on-city-revenue-caps-kicks-off-1493833.php.

[4] Ron Nissimov, *City's Revenue Fight Going to the Nov. 2 Ballot*, Houston Chronicle, Aug. 26, 2004, https://www.chron.com/news/politics/article/City-s-revenue-fight-going-to-the-Nov-2-ballot-1969054.php.

[5] Ron Nissimov*, Survey Weighs Propositions; Both Limit Revenues*, Houston Chronicle, Oct. 30, 2004, https://www.chron.com/news/politics/article/Survey-weighs-propositions-both-limit-revenues-1516633.php

This representation aligns with the primacy clause which states that, if two propositions "relating to limitations on increases in City revenues" were approved at the same election, Proposition 1 alone would prevail if it received more votes than the competing proposition. We presume the voters were familiar with this procedural posture when they voted on Propositions 1 and 2 and cast their votes accordingly. *See Dacus*, 466 S.W.3d at 825. We will not forgo this presumption and its application to the issue here merely because the primacy clause was not included within the quoted portion of Proposition 1 in the Election Ordinance.

We overrule Hotze's first issue.

### B. Proposition 2 Triggers Proposition 1's Primacy Clause.

In his second issue, Hotze asserts that Proposition 2 does not trigger Proposition 1's primacy clause because "Proposition 1 and Proposition 2 impact different phases of the budgeting process." Specifically, Hotze contends that Proposition 1 "solely relates to limitations on the assessment and collection of property tax revenues" whereas Proposition 2 "relates to the necessity for prior voter approval before total spending in any given budget year may exceed a particular mathematical formula." We reject this contention.

The rules governing the construction of state statutes also govern our construction of municipal ordinances. *See City of Pearland v. Reliant Energy Entex*, 62 S.W.3d 253, 256 (Tex. App.—Houston [14th Dist.] 2001, pet. denied). The proper construction of an ordinance is a question of law we review *de novo*. *Id*.

In construing a municipal ordinance, we seek to determine and give effect to the intent of the governing body of the municipality. *MHI P'ship, Ltd. v. City of League City*, 525 S.W.3d 370, 378 (Tex. App.—Houston [14th Dist.] 2017, no pet.). We ascertain that intent from the language the governing body used in the

9

ordinance — if the meaning of the ordinance's language is unambiguous, we adopt the interpretation supported by the plain meaning of the provision's words. *Id*. "We must not engage in forced or strained construction; instead, we must yield to the plain sense of the words the governing body chose." *Id*. at 378-79.

Here, a plain reading of Propositions 1 and 2 shows that Proposition 2 falls within the primacy clause's ambit. The primacy clause states:

> If another proposition for a Charter amendment *relating to limitations on increases in City revenues* is approved at the same election at which this proposition is also approved, and if this proposition receives the higher number of favorable votes, then this proposition shall prevail and the other shall not become effective.

(emphasis added). As shown in the Election Ordinance, the text of Proposition 2 advances an amendment "relating to limitations on increases in City revenues":

- Proposition 2 is described as an amendment "Relating to Limits on All Combined City Revenues."

- Subsection 1 of Proposition 2 is entitled "Limitation on Growth in Revenues."

- Pursuant to Subsection 1, the Houston City Council may not, without the prior approval of 60% of those voting at a regular election, increase the City's "combined revenues" in an amount greater than the combined rates of inflation and population. Proposition 2 defines "combined revenues" as "the combined revenues of the City's General Fund, Enterprise Funds and Special Revenue Funds" and excludes "grant monies and other revenues received from other governmental entities" and "IntraCity (in other words, InterFund) revenues."

As these excerpts show, Proposition 2 advances an amendment that limits increases in City revenue past certain thresholds. Therefore, it falls within the primacy clause's purview.

We overrule Hotze's second issue.

10

**C.     Proposition 1's Primacy Clause Does Not Conflict With the Texas Constitution and State Law.**

In his third issue, Hotze asserts Proposition 1's primacy clause "conflicts with the Texas Constitution and state law and is therefore void and unenforceable." Hotze bases this argument on article XI, section 5 of the Texas Constitution and Texas Local Government Code sections 9.004(e) and 9.005(a).

Article XI, section 5 of the Texas Constitution provides as follows with respect to the amendment of city charters for cities of 5,000 or more population:

> The adoption or amendment of charters is subject to such limitations as may be prescribed by the Legislature, and no charter or any ordinance passed under said charter shall contain any provision inconsistent with the Constitution of the State or *of the general laws enacted by the Legislature of this State.*

Tex. Const. art XI, § 5 (emphasis added).  Hotze contends the primacy clause runs afoul of this constitutional provision by violating sections 9.004(e) and 9.005(a). We examine these arguments below.

### 1.     Texas Local Government Code Section 9.004(e)

Texas Local Government Code section 9.004(e) states:

> The ballot shall be prepared so that a voter may approve or disapprove any one or more amendments without having to approve or disapprove all of the amendments.

Tex. Loc. Gov't Code Ann. § 9.004(e).  Hotze asserts that, because the primacy clause required voters approving of Proposition 1 to also disapprove of Proposition 2, the primacy clause violated section 9.004(e).  This argument essentially raises a ballot-preparation challenge; as such, it was required to be raised in an election contest.  Because the underlying proceeding is not an election contest, we conclude that this argument is waived.

An election contest is a special proceeding created by the Legislature to provide a remedy for elections tainted by fraud, illegality, or other irregularity. *See* Tex. Elec. Code Ann. §§ 233.001-233.014; *Blum v. Lanier*, 997 S.W.2d 259, 262 (Tex. 1999). "[A]n election contest includes any type of suit in which the validity of an election or any part of the elective process is made the subject matter of the litigation." *Rossano v. Townsend*, 9 S.W.3d 357, 362 (Tex. App.—Houston [14th Dist.] 1999, no pet.). Under the Election Code, an election contest is subject to a strict timetable: it may not be brought earlier than the day after election day and must be filed within 30 days after the return date of the election. Tex. Elec. Code Ann. § 233.006(a)-(b); *see also Hotze v. White*, No. 01-08-00016-CV, 2010 WL 1493115, at *4 (Tex. App.—Houston [1st Dist.] Apr. 15, 2010, pet. denied) (mem. op.).

A challenge similar to the issue Hotze raises here was addressed in *Arredondo v. City of Dallas*, 79 S.W.3d 657 (Tex. App.—Dallas 2002, pet. denied). There, the City argued an ordinance's inclusion on the January 1979 election ballot violated Article 1269q, which provided that "no other issue could be joined on the same ballot as a proposition to increase the salaries of the fire department and police department." *Id.* at 669. Holding that this type of challenge only could be raised in an election contest, the court stated that the City's attempt to "challeng[e] the validity of placing [the ordinance] on the 1979 election ballot" was "nothing more than a back-door attempt to contest the election more than twenty years after it was held." *Id.* at 670. Accordingly, because this issue was not raised in a timely-filed election contest, the court concluded that it was waived. *Id.*

Similarly here, Hotze's section 9.004(e) argument challenges the propriety of placing Proposition 1 and its primacy clause on the 2004 ballot. This ballot-

12

preparation challenge was required to be raised in an election contest; because Hotze failed to do so, this argument is waived. *See id.* at 669-70; *see also Hotze*, 2010 WL 1493115, at \*4 (stating that an election contest is the "only statutory mechanism" to "challenge the process by which the City presented the propositions to the electorate").

We overrule Hotze's challenge premised on Texas Local Government Code section 9.004(e).

### 2.    Texas Local Government Code section 9.005(a)

Texas Local Government Code section 9.005(a) states:

> A proposed charter for a municipality or a proposed amendment to a municipality's charter is adopted if it is approved by a majority of the qualified voters of the municipality who vote at an election held for that purpose.

Tex. Loc. Gov't Code Ann. § 9.005(a). Asserting the primacy clause violates this provision, Hotze argues that, because "Propositions 1 and 2 were both adopted by a majority of the voters of the City of Houston on November 2, 2004[,] . . . both Propositions must be enacted." We reject this contention.

Section 9.005(a) states that a proposed amendment is "adopted if it is approved by a majority of the qualified voters". *Id.* Here, as discussed above, both Propositions 1 and 2 were approved by a majority of the qualified voters at the November 2004 election. The results of this election were declared in the Adoption Ordinance, which states that Propositions 1 and 2 "were approved by a majority of the qualified voters voting in the Election and are ***adopted***, with Proposition 1 receiving a higher number of votes than Proposition 2." (emphasis added). Accordingly, because the primacy clause did not prevent adoption of Proposition 2 as part of the city charter, the primacy clause does not violate section

13

9.005(a).

We overrule Hotze's challenge premised on Texas Local Government Code section 9.005(a).

## III.      Attorney's Fees

In his final issue, Hotze requests that this case be remanded to the trial court so that he may seek recovery of his attorney's fees from Appellees. Because we do not sustain any of Hotze's issues challenging the trial court's summary judgment order, we reject his request regarding attorney's fees. We overrule Hotze's final issue.

### RESPONSE TO THE DISSENT

Both Hotze and our dissenting colleague appear to presume the statute's use of the term "adopted" means that an ordinance must be given "effectiveness" upon adoption. Without this presumption, the question cannot be "may a home-rule municipality nevertheless deny effectiveness." Dissenting Op. at 1. We share no such presumption, particularly given the absence of any statutory language, cited precedent, or known precedent instructing otherwise.

The dissent further appears to imply that if two municipal ordinances were inconsistent without municipal interference or primacy clauses, this court should force compliance with both. Again, we are aware of no such precedent. While we recognize the equitable argument that this particular primacy clause is potentially unfair to the supporters of Proposition 2, that equitable argument was not briefed and not addressed by the dissent.

Finally, our dissenting colleague repeatedly cites Texas Local Government Code section 9.005(a) for the proposition that Proposition 2 became effective upon adoption. Clearly established rules of statutory construction dictate that, "We must

14

give effect to each provision of a statute so that none is rendered meaningless or mere surplusage." *TIC Energy & Chem., Inc. v. Martin*, 498 S.W.3d 68, 74 (Tex. 2016). If section 9.005(a) meant that a charter amendment was effective upon adoption, then section 9.005(b) (identifying when a charter amendment becomes effective) would be surplusage. *See Surplusage*, Black's Law Dictionary (11th ed. 2019) (defining "surplusage" as "[r]edundant words in a statute or legal instrument; language that does not add meaning"). We cannot presume that the Legislature drafted 9.005(b) to identify the date an amendment becomes effective despite already identifying when an amendment becomes effective. *See State v. Shumake*, 199 S.W.3d 279, 287 (Tex. 2006) ("In construing a statute, we give effect to all its words and, if possible, do not treat any statutory language as mere surplusage."). We also cannot presume the Legislature intended for section 9.005(a) to control effectiveness when it used the word "adopted" in (a) and "effect" in (b). *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 865 (Tex. 1999) ("[I]t is cardinal law in Texas that a court construes a statute, 'first, by looking to the plain and common meaning of the statute's words.' If the meaning of the statutory language is unambiguous, we adopt, with few exceptions, the interpretation supported by the plain meaning of the provision's words and terms."); *Geters v. Eagle Ins. Co.*, 834 S.W.2d 49, 50 (Tex. 1992) (per curiam) (courts must apply ordinary meanings). We cannot enlarge the meaning and scope of section 9.005(a) given the reasonable interpretation of the law as it is written. *See Monsanto Co. v. Cornerstones Mun. Util. Dist.*, 865 S.W.2d 937, 939 (Tex. 1993) ("When applying the ordinary meaning, courts 'may not by implication enlarge the meaning of any word in the statute beyond its ordinary meaning, and implications from any statutory passage or word are *forbidden* when the legislative intent may be gathered from a reasonable interpretation of the statute *as it is written.*'") (quoting *Sexton v. Mount Olivet Cemetery Ass'n*, 720 S.W.2d 129, 138

15

(Tex. App.—Austin 1986, writ ref'd n.r.e.) (emphasis in original)); *see also Jasek v. Tex. Dep't of Family & Protective Servs.*, 348 S.W.3d 523, 535 (Tex. App.—Austin 2011, no pet.) ("A court may not judicially amend a statute and add words that are not implicitly contained in the language of the statute.") (citing *Lee v. City of Houston*, 807 S.W.2d 290, 295 (Tex. 1991)). Therefore, we reject the dissent's interpretation of Texas Local Government Code section 9.005(a) to mean Proposition 2 became effective upon adoption.

## CONCLUSION

We affirm the trial court's September 16, 2019 summary judgment order.

/s/    Meagan Hassan
Justice

Panel consists of Justices Jewell, Zimmerer, and Hassan (Jewell, J., dissenting).

16