ACCEPTED
13-15-00237-CV
THIRTEENTH COURT OF APPEALS
CORPUS CHRISTI, TEXAS
7/1/2015 9:29:56 AM
CECILE FOY GSANGER
CLERK

NO. 13-15-00237-CV

IN THE COURT OF APPEALS
FOR THE THIRTEENTH DISTRICT OF TEXAS
AT CORPUS CHRISTI - EDINBURG

FILED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
7/1/2015 9:29:56 AM
CECILE FOY GSANGER
Clerk

**CITY OF PORT ISABEL, TEXAS, MARIA DE JESUS GARZA,
GUILLERMO TORRES AND JOE E. VEGA
Appellants,**

**VS.**

**JUAN JOSE "JJ" ZAMORA, SR., AND MARTIN C. CANTU
Appellees.**

From Cause Number 2015-DCL-02342
In the 444th Judicial District Court of Cameron County, Texas

**APPELLANTS MARIA DE JESUS
GARZA AND JOE E. VEGA'S BRIEF**

Michael Cowen
Texas Bar No. 00795306
The Cowen Law Group
62 E. Price Road
Brownsville, Texas 78521
Telephone (956) 541-4981
Facsimile (956) 504-3674
E-Mail: Michael@CowenLaw.com

## IDENTITY OF PARTIES AND COUNSEL

Appellants
City of Port Isabel

Counsel for Appellants
Robert L. Collins
Texas Bar No. 04618100
Audrey Guthrie
Texas Bar No. 24083116
P.O. Box 7726
Houston, Texas 77270-7726
(713) 467-8884
(713) 467-8883 Facsimile
houstonlaw2@aol.com

Maria de Jesus Garza
Joe Vega

Michael R. Cowen
Texas Bar No. 00795306
62 E. Price Road
Brownsville, TX 78521
(956) 541-4981
(956) 504-3674 Facsimile
michael@cowenlaw.com

Guillermo Torres

Frank E. Perez
Texas Bar No. 15776540
300 Mexico Boulevard
Brownsville, TX 78520
(956) 504-5403
(956) 504-5991 Facsimile
fperez@feperezandassociates.com

Appellees
Juan Jose "JJ" Zamora
Martin C. Cantu

Counsel for Appellees
Gilberto Hinojosa
622 East St. Charles St.
Brownsville, Texas 78520
956-544-4218
Fax: 956-544-1335
ghinojosa@ghinojosalaw.net

# TABLE OF CONTENTS

Identity of Parties and Counsel    2

Index of Authorities    4

Statement of the Case    6

Statement Regarding Oral Argument    6

Issues Presented    7

Statement of Facts    8

Summary of Argument    11

Arguments and Authorities    12

     I.  The Trial Court Had No Legal Authority to Issue a Temporary Injunction Returning Cantu and Zamora to Office During the Pendency of this Case    12

     II.  The Trial Court Erred In Basing the Temporary Injunction on Grounds Not Pled by Appellees    13

     III.  The Trial Court Erred in Finding that Cantu and Zamora Were Removed in Violation of the City Charter    15

         A.  The City Charter Provides Two Separate Ways that a Commissioner Can Be Removed from Office    16

         B.  The City Commission Had the Authority to Remove Cantu and Zamora at the April 13, 2015 Meeting    18

     IV.  The Trial Court Erred in Finding the Cantu and Zamora Were Deprived of Due Process    20

     V.  Section 2.02 of the City Charter is Constitutional    21

     VI.  The City Commission Can Remove a Commissioner Without Resorting to Quo Warranto    22

VII.  The Temporary Injunction is Overly Broad because It       23
Permits Appellees to Vote on Matters Regarding this Lawsuit

Conclusion and Prayer                                          24

Certificate of Service                                         25

Certificate of Compliance                                     24

Appendix                                                       26

# INDEX OF AUTHORITIES

**Cases**

*Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002)     23, 24

*Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 525 (Tex. 1981)     17

*City of Alamo v. Garcia*, 960 S.W.2d 221 (Tex. App.–Corpus Christi 1997)     11, 12, 13, 15, 21, 23

*City of Laredo v. Villarreal*, 81 S.W.3d 865 (Tex. App.–San Antonio 2002)     15

*EMS USA, Inc. v. Shary*, 309 S.W.3d 653 (Tex. App.–Houston [14th Dist.] 2010, no pet.)     13

*Jones v. City of Arcola*, 1999 Westlaw 546965 (Tex. App.–Austin 1999)     15

*Hamman v. Hayes*, 391 S.W.2d 73 (Tex. App.–Beaumont 1965, writ refused)     23

*Huntress v. McGrath*, 946 S.W.2d 480 (Tex. App.–Ft. Worth 1997, orig. proceeding)     15

*Riggins v. City of Waco*, 93 S.W. 426 (Tex. 1906)     15, 22

**Statute and Charter Provision**

Tex. Local Gov't § 171.007     22

Port Isabel City Charter, Section 2.02     passim

**Attorney General Opinion**

Tex. Atty. Gen. Opin. GA-0068 (2003)     22

**STATEMENT OF THE CASE**

Nature of underlying proceeding: Appellees, Juan Zamora and Martin Cantu were removed from their offices as City Commissioners for violations of the Port Isabel City Charter. Appellees filed suit against Relators, the City of Port Isabel, two City Commissioners, and the Mayor in their personal and official capacities claiming that Appellees should not have been removed from office and seeking an injunction to undue the vote and reinstate them into their offices.

Action complained of: On April 24, 2015, a hearing was held on Appellants Plea to Jurisdiction and Appellee's Temporary Injunction. The Temporary Injunction was erroneously granted on April 24, 2015.

**STATEMENT REGARDING ORAL ARGUMENT**

There is sufficient applicable and well-established law to decide this issue without oral arguments. However, if Appellees are granted oral arguments, then Appellants request an equal opportunity to be heard and present argument.

# ISSUES PRESENTED

1.  Given this Court's prior holding a city councilman removed pursuant to a city charter provision does not have the right to a temporary injunction while he pursues judicial review of the removal, did the trial court err in granting such an injunction?

2.  Can a trial court grant a temporary injunction based on grounds not plead by movants as a basis for injunctive relief?

3.  Did the City of Port Isabel properly remove appellees from their positions as city commissioners when appellees admittedly violated the city charter by doing business with the city while serving as commissioners?

4.  Did appellees receive due process when they had notice, an opportunity to speak and be heard, and actually attended and participated in the meeting in which they were removed?

5.  Can a home rule city require a higher ethical standard than the minimum required by state law?

6.  Can a home rule city enforce its own charter without having to depend on a district attorney or the attorney general to file a quo warranto action?

7.  Can plaintiffs use a temporary injunction to preclude appellate review or an effective defense by using the injunction to appoint their attorney as the defendant's city attorney, to replace defendant's attorney with an attorney chosen by plaintiffs and their attorney, and to vote to abandon appeals and to prevent the city from defending the lawsuit plaintiffs filed against it?

8.  How can Appellees claim that the City Commission acted arbitrarily and illegally in removing them under Section 2.02 when they themselves attempted to remove another commissioner under Section 2.02 at the same meeting?

## STATEMENT OF FACTS

Section 2.02 of the Port Isabel City Charter prohibits City Commissioner's from doing business with the City. RR 136-137, 147. Section 2.02 further provides that any City Commissioner who does business with the city vacates his or her position. *Id.* Appellees Martin Cantu and Juan Jose Zamora have admitted doing business with the City of Port Isabel while serving as City Commissioners. RR 84, 86-87, 108. The issue in this appeal is whether the City of Port Isabel can enforce the anti-corruption provisions of its own charter by removing City Commissioners who do business with the city.

Martin Cantu and Juan Jose Zamora were Port Isabel City Commissioners. While serving as City Commissioners, they both did business with the city through their respective auto repair businesses. RR 84, 86-87, 108. Both Cantu and Zamora testified under oath that they did business with the city while serving as commissioners, and there was no factual dispute as to whether they violated Section 2.02 of the City Charter.

A Port Isabel City Commission meeting was scheduled for April 13, 2015. RR 126-129, 175-178. Prior to that meeting, Cantu placed an item on the agenda calling for a vote to remove Torres from office for allegedly violating Section 2.02 of the City Charter. RR 85, 127. Torres subsequently placed an item on the agenda for the

8

same meeting to remove Cantu and Zamora for violating the same Section of the Charter by doing business with the City. RR 177.

Both Cantu and Zamora had notice of the April 13, 2015 meeting, and of the fact that an item was placed on the agenda calling for their removal. RR 77-78, 112, 126-129, 175-178. The agenda stated that proposed removal was based on Cantu and Zamora's violation of Section 2.02's prohibition of doing business with the city. RR 177.

Cantu and Zamora both attended the meeting, and had the opportunity to speak and be heard. RR 78, 112. At the meeting, Zamora moved to remove Torres from office pursuant to Section 2.02. RR 112. The commission voted 3-2 against Zamora's motion. The commission then determined that Cantu and Zamora had violated Section 2.02 by doing business with the city, and voted to remove them from office. CR 93, ¶ 12.

Cantu and Zamora filed a lawsuit seeking injunctive and declaratory relief to undo their removal from office. On April 24, 2015, the trial court held an evidentiary hearing, at which Cantu and Zamora both testified that they had done business with the city while serving as commissioners. RR 84, 86-87, 108. Despite this confession, the trial court granted a temporary injunction ordering that they be returned to the City Commission. CR 103-105.

Cantu and Zamora, together with a newly-elected commissioner who replaced Torres, have since used the temporary injunction to try to preclude any appellate review in this case. Despite being parties to this lawsuit, they have voted on matters related to this lawsuit, including hiring their attorney as the new city attorney, firing the former city attorney, and voting to stop any appeals of the lawsuit they filed. Based on appellees' use of the injunction, the city commission is now advised on matters related to this lawsuit by the same attorney who represented Cantu and Zamora in the trial court.

## SUMMARY OF ARGUMENT

Port Isabel's City Charter prohibits city commissioners from doing business with the City, and provides that commissioners who violate this provision forfeit their office. Appellees admittedly did business with the city while serving as commissioners, and were properly removed from their office pursuant to the City Charter. The trial court erred in granting a temporary injunction returning them to office.

Both this Court and the Texas Supreme Court have held that a city commission has the authority to remove a commissioner. Judicial review of such removals is limited to two issues: (1) whether the commission acted arbitrarily; and (2) whether appellees received due process. The undisputed evidence shows that the city commission did not act arbitrarily in removing appellees because appellees admittedly violated the City Charter's prohibition against doing business with the city. Appellees received due process because they had notice and an opportunity to be heard prior to the vote on their removal

Moreover, this Court has previously held that a city commissioner judicially challenging his removal has no right a temporary injunction maintaining him in office. *City of Alamo v. Garcia*, 960 S.W.2d 221, 223-24 (Tex. App.–Corpus Christi 1997).

11

Finally, this Court should not permit appellees to usurp the Court's appellate jurisdiction by allowing appellees to use the temporary injunction to take over appellant's defense and abandon this appeal. Temporary injunctions should only be used to preserve the status quo, and not to create final, unappealable orders. Appellees are abusing the process by using the temporary injunction to hire their attorney as the new city attorney, and to vote to force appellants to discontinue this appeal.

## ARGUMENT

**I.  The Trial Court Had No Legal Authority to Issue a Temporary Injunction Returning Cantu and Zamora to Office During the Pendency of this Case (Issue No. 1)**

The trial court did not have the legal authority to issue a temporary injunction ordering that Cantu and Zamora return to their offices during the pendency of this lawsuit. The City Commission, pursuant to the City Charter, has the power to remove commissioners, and Texas law only grants the courts the power to review for abuse of discretion and lack of due process. Moreover, "the right to a review by a judicial body does not entitle appellees to a temporary injunction, the effect of which is the perpetuate them in office pending that review." *City of Alamo v. Garcia*, 960 S.W.2d

12

221, 223-24 (Tex. App.–Corpus Christi 1997). An injunction is only appropriate when the city charter itself is unconstitutional so that it does not constitute "lawful authority" to remove someone from office *Id.* at 226-27.

In the temporary injunction order, the trial court did not find that the city charter itself was unconstitutional, or that the charter did not provide the city commission with the lawful authority to remove a commissioner. CR 103-105. Rather, the trial court merely found that the charter was not followed, and that there was a lack of due process.[1] CR 104. Because the trial court did not find that the charter was unconstitutional or otherwise did not constitute a lawful authority, it had no power to issue a temporary injunction. *City of Alamo v. Garcia*, 960 S.W.2d at 223-224.

## II. The Trial Court Erred In Basing the Temporary Injunction on Grounds Not Pled by Appellees

**(Issue No. 2)**

To obtain a temporary injunction, the applicant must plead a cause of action against the defendant and show both a probable right to recover on that cause of action. *EMS USA, Inc. v. Shary*, 309 S.W.3d 653, 657 (Tex. App.—Houston [14th

[1]Appellants' disagree with those findings, and have challenged them in this Brief.

Dist.] 2010, no pet.. To show a probable right of recovery, the applicant must plead and present evidence to sustain the pleaded cause of action. *Id.*

In their Third Amended Petition, Appellees only pled one basis for having a probable right to recovery in support of their request for a temporary injunction:

> 20. It is probable that Plaintiff will recover from Defendants after a trial on the merits because the law is clear that only a successful quo warranto proceeding brought by the appropriate authority, which does not include Defendants, can remove Plaintiffs from their respective offices. See Tex. Civ. Prac. Rem. Code Section 66 et. seq; *Hamman v Hayes*, 391 S.W. 2d 73, 74 (Tex. App. Beaumont 1965, writ refused).

CR 98.  However, the trial court, in granting the temporary injunction, did not find that appellees could only be removed by a quo warranto proceeding.  CR 103-104. Rather, the trial court found a probable right to recover based on two grounds not pled as bases for injunctive relief: lack of compliance with the charter and lack of due process.  CR 104.  Because appellees failed to prove the cause of action for injunctive relief they actually pled,[2] the temporary injunction should be dissolved.

---

[2]Appellees did seek declaratory (but not injunctive) relief based on alleged non-compliance with the City Charter.  RR 96.  Appellees did not plead a lack of due process.  RR 90-100.

14

## III. The Trial Court Erred in Finding that Cantu and Zamora Were Removed in Violation of the City Charter

## (Issue No. 3)

The Texas legislature vested the power to remove a mayor or commissioner in the city council, and no power of review is given to the courts. *Jones v. City of Arcola*, 1999 Westlaw 546965 (Tex. App.—Austin 1999); *see Huntress v. McGrath*, 946 S.W.2d 480, 485 (Tex. App.—Ft Worth 1997, orig. proceeding); *Riggins v. City of Waco*, 93 S.W. 426, 427 (Tex. 1906). As this Court stated in *City of Alamo v. Garcia*, "Texas courts, in recognition of the autonomy and separate powers of municipal legislatures, will not interfere to protect a person from removal from office by a man or body of men to whom to power to remove is given by law." 960 S.W.2d at 223. Judicial review is limited to whether the city commission committed an abuse of discretion or violated due process. Id. " The most that could be asserted in favor of the power of the courts is that they may inquire whether or not charges were duly preferred, a hearing had, and evidence adduced tending to sustain them." *Riggins*, 93 S.W. at 32-33.

A city's construction of it's own charter or ordinance is entitled to serious consideration as long as it is reasonable. *City of Laredo v. Villarreal*, 81 S.W.3d 865 (Tex. App.—San Antonio 2002). Moreover, because the trial court's review of the

15

removal was limited to whether the city commission acted arbitrarily, the city commission's interpretation of the City's charter should be accepted unless there was no basis for that interpretation.

Appellees plead two reasons why they claimed the City Charter was not followed: (1) they argued that the City Commission did not have the power to remove a commissioner unless that commissioner was first convicted of a crime; (2) they argued that the City Commission could not remove a commissioner at a "special meeting." Both of these arguments fail.

### A. The City Charter Provides Two Separate Ways that a Commissioner Can Be Removed from Office

The Port Isabel City Charter authorized the City Commission to remove Cantu and Zamora at a commission meeting.

Section 2.02 of the City Charter provides, "The Mayor, Commissioners, and other officers and employees . . . shall not be interested in the profits or emoluments or any contract, job, work, or service for the City of Port Isabel. . . ." RR 136. Section 2.02 then provides two mechanisms by which an elected official who violated the charter can be removed from office. First, the City Commission can vote to remove that person for violating the charter. Specifically, Section 2.02 provides, "If

16

the Mayor or any City Commissioner fails to maintain, the foregoing qualifications . . . the City Commission shall at its next regularly scheduled meeting declare a vacancy to exist and shall fill said vacancy as set forth in Section 2.03 of this Charter." RR 137.

A second method by which a person can be removed is if there is a criminal conviction. Section 2.02 provides, "Any violation, of this Section shall be a misdemeanor, and on conviction for such violation such office or employment shall be forfeited." RR 137.

Appellees argue that the second method is the exclusive method of removing a commissioner. However, this interpretation would render the provision requiring the City Commission to declare a vacancy at the next regularly scheduled meeting and fill the vacancy meaningless. *See Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 540 (Tex.1981) ("It is a rule of statutory construction that every word of a statute must be presumed to have been used for a purpose"). Moreover, the provision providing that a mayor or city commissioner may be removed at a meeting is limited to the mayor and the commissioners. In contrast, the criminal conviction provision applied to all officers and employees as well. Therefore, the Port Isabel City Commission did not act in an arbitrary manner when it interpreted Section 2.02 as permitting a commissioner to be removed at a city council meeting.

17

Further proof that the City Commission's interpretation of the charter as authorizing the removal was not "arbitrary" is the fact that Cantu and Zamora invoked the same procedure at the same meeting in an attempt to remove Torres. RR 85, 104-105, 111-112. Appellees interpreted the charter in the same way as appellants until they ended up on the losing side of the removal issue. Because a reasonable city commission could have interpreted Section 2.02 of the charter as giving the commission the power to remove commissioners for violating Section 2.02 at a regularly-scheduled "special" meeting, the removal was neither arbitrary or capricious, and should be respected by the courts.

There is also no question that the evidence supports the City Council's findings that Cantu and Zamora violated the charter by doing business with the city while serving as commissioners. Cantu and Zamora both testified that they did business with city while commissioners. RR 84, 86-87, 108.

**B.    The City Commission Had the Authority to Remove Cantu and Zamora at the April 13, 2015 Meeting**

The City Commission did not act arbitrarily in treating the April13, 2015 meeting as a "regularly scheduled" meeting at which it could remove Cantu and Zamora under Section 2.02. The Port Isabel City Commission normally meets on

Tuesdays, but met on April 13, 2015 (the Monday before the previously-scheduled Tuesday meeting) to accommodate all of the commissioners' schedules. The meeting was not called specifically to call for the removal of Cantu and Zamora. In fact, it was already scheduled for Monday, April 13, 2015 before the agenda item to remove Cantu and Zamora was added. *See* RR 126-128 (draft agenda, faxed at 4:49 on April 10, showing that the meeting was scheduled for April 13; the item to remove Cantu and Zamora was not on the agenda); RR 175-178 (agenda for April 13, 2015 meeting, including item to remove Cantu and Zamora, posted at 6:20 p.m. on April 10).

Section 2.02 does not state that a commissioner can only be removed at a "Regular Meeting" or that a commissioner cannot be removed at a "Special Meetings." A reasonable interpretation of the term "regularly scheduled meeting" is that the meeting has to be scheduled in the normal order of business, and that the commission cannot call a new meeting just for the purpose of removing commissioners. Given that Cantu and Zamora placed on item to remove Torres pursuant to Section 2.02 at the April 13 meeting, and that they did not object to the consideration oft he removal items at the April 13 meeting on the ground that it was a "Special Meeting," it is evident that Cantu and Zamora interpreted the April 13, 2015 meeting as a "regularly scheduled" meeting at which a commissioner could be removed. It is only after they failed to remove Torres, and they themselves were

19

removed that they complained about the process they themselves first invoked.

Moreover, Cantu and Zamora cannot show any harm from the fact that the meeting was held on April 13 rather than April 14. They both had notice of the meeting, and of the agenda item regarding their proposed removal. They both had an opportunity to speak and be heard. They both attended and spoke. And most importantly, they were both admittedly guilty of violating the charter by doing business with the city, and they would have been as guilty on Tuesday as they were on Monday.

## IV. The Trial Court Erred in Finding the Cantu and Zamora Were Deprived of Due Process

**(Issue No. 4)**

The trial court's second ground for finding a probable fight to recover was that appellees due process rights under the Texas Constitution were allegedly violated. This finding was erroneous for two reasons. First, appellees never pled that their due process rights were violated. RR 90-100. Second, Cantu and Zamora received the due process required by law because they had notice of the April 13 meeting and an opportunity to be heard at that meeting.

"Due process at a minimum requires notice and an opportunity to be heard at

20

a meaningful time and in a meaningful manner." *City of Alamo v. Garcia*, 960 S.W.2d at 225. In the *City of Alamo* case, this Court found that there was due process when a city commissioner had the right to appear at a city commission meeting and to be heard on the issue of his removal. *Id.* Cantu and Zamora had notice of the hearing and an opportunity to be heard at the hearing. More over, they cannot claim that they were prevented from presenting some evidence that would have changed the outcome of whether they were found to have violated the City Charter. They both admitted to doing business with the city while serving, which violates Section 2.02. Therefore, as a matter of law appellees received due process, and the trial court erred in finding otherwise.

## V. Section 2.02 of the City Charter is Constitutional (Issue No. 5)

Appellees pled, as a basis for declaratory judgment, that Section 2.02 of the City Charter was unconstitutional. CR 96. The trial court did not find that Section 2.02 was unconstitutional, and appellees did not plead unconstitutionality as a basis for injunctive relief. CR 97-99, 103-105. Therefore, any argument that Section 2.02 is unconstitutional should not serve as a basis for affirming the temporary injunction. However, out of an abundance of caution, Appellants have set out the authority for

why it complies with the Texas Constitution.

Section 2.02 of the Port Isabel City Charter is constitutional. Appellees claim that Section 2.02 is unconstitutional and preempted because it imposes a greater restriction of an official's ability to do business with the city than provided by state law. However, home rule cities are permitted to have ethical requirements that exceed those imposed by state law. Tex. Atty Gen. Opin GA-0068 (2003). Local Government Code Section 171.007(b) provides that the conflict-of-interest provisions of chapter 171 are "cumulative of municipal charter provisions and municipal ordinances defining and prohibiting conflicts of interests." Therefore, neither state statutory nor constitutional law prohibits Port Isabel from prohibiting its commissioners from doing business with the city.

## VI. The City Commission Can Remove a Commissioner Without Resorting to Quo Warranto

**(Issue No. 6)**

The city commission has the power to remove a commissioner from office for violating the charter. Quo warranto is not the sole method of removing a commissioner. The Texas Supreme Court affirmed a city's right to remove its own elected officials over a century ago in *Riggins v. City of Waco*, 93 S.W. 426 (Tex.

1906). More recently, the Thirteenth Court of Appeals held that the city has that right in *City of Alamo v. Garcia*, 960 S.W.2d 221 (Tex. App.—Corpus Christi 1997).

In contrast, none of the quo warranto cases cited by appellees involved a city commission removing an elected official pursuant to a municipal charter. Rather, every one of those cases related to a private citizen's attempt to file a lawsuit to remove a public official from office. *E.g. Hamman v Hayes*, 391 S.W. 2d 73, 74 (Tex. App. Beaumont 1965, writ refused).

## VII. The Temporary Injunction is Overly Broad because It Permits Appellees to Vote on Matters Regarding this Lawsuit

**(Issue No. 7)**

Arguing in the alternative, in the event that the Court affirms the temporary injunction, the Court should reform and narrow the scope of the injunction. As the injunction now stands Appellees can vote on this lawsuit. They have voted to fire the city attorney, to make the attorney representing them in this lawsuit into the new city attorney, to have the attorney representing them in this lawsuit advise the commission in executive session regarding matters pertaining to this lawsuit, to retain counsel chosen by their attorney to represent the City in this lawsuit, and to abandon this appeal. A temporary injunction is only supposed to preserve the status quo. *Butnaru*

*v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). It should not be used as a means to secure a final adjudication, or to prevent appellate review of the trial court's orders. Therefore, in the event that the Court affirms the granting of the temporary injunction, Appellants ask that the Court also modify the injunction to prohibit Appellees from voting on matters pertaining to this action or otherwise trying to prohibit the City from appealing or defending itself in the lawsuit Appellees filed.

## CONCLUSION AND PRAYER

Appellants Maria de Jesus Garza and Joe E. Vega respectfully pray that the Court reverse the trial court's granting of an injunction.

Respectfully submitted,

/s/ Michael Cowen
Texas Bar No. 00795306
The Cowen Law Group
62 E. Price Road
Brownsville, Texas 78521
Telephone (956) 541-4981
Facsimile (956) 504-3674
E-Mail: Michael@CowenLaw.com

## CERTIFICATE OF SERVICE

As required by Texas Rule of Appellate Procedure 6.3 and 9.5(b), (d), (e), I certify that I have served this document on all other parties, on this 24th day of June, 2015:

Gilbert Hinojosa
622 East St. Charles St.
Brownsville, Texas 78520
Fax: 1-956-544-1335
ghinojosa@ghinojosalaw.net

Robert L. Collins
P.O. Box 7726
Houston, Texas 77270-7726
(713) 467-8884
(713) 467-8883 Facsimile
houstonlaw2@aol.com
ATTORNEYS FOR CITY OF
PORT ISABEL

Frank E. Perez
FRANK E. PEREZ & ASSOCIATES, PC
300 Mexico Boulevard
Brownsville, TX 78520
 (956) 504-5991 Facsimile
fperez@feperezandassociates.com

/s/ Michael Cowen

**CERTIFICATE OF COMPLIANCE**

This document complies with the typeface requirements of Tex. R. App. P. 9.4(e) because it has been prepared in a conventional typeface no smaller than 14-point for text and 12-point for footnotes. This document also complies with the word-count limitations of Tex. R. App. P. 9.4(I), if applicable, because it contains 4,797 words, excluding any parts exempted by Tex. R. App. P. 9.4(i)(1).

/s/ Michael Cowen

NO. 13-15-00237-CV

IN THE COURT OF APPEALS
FOR THE THIRTEENTH DISTRICT OF TEXAS
AT CORPUS CHRISTI - EDINBURG

**CITY OF PORT ISABEL, TEXAS, MARIA DE JESUS GARZA,
GUILLERMO TORRES AND JOE E. VEGA**
**Appellants,**

**VS.**

**JUAN JOSE "JJ" ZAMORA, SR., AND MARTIN C. CANTU**
**Appellees.**

From Cause Number 2015-DCL-02342
In the 444th Judicial District Court of Cameron County, Texas

**APPENDIX TO APPELLANTS MARIA
DE JESUS GARZA AND JOE E. VEGA'S BRIEF**

Michael Cowen
Texas Bar No. 00795306
The Cowen Law Group
62 E. Price Road
Brownsville, Texas 78521
Telephone (956) 541-4981
Facsimile (956) 504-3674
E-Mail: Michael@CowenLaw.com

27

## CONTENTS OF APPENDIX

1.    Temporary Injunction Order

2.    Page containing Section 2.02 of the Port Isabel City Charter

3.    *City of Alamo v. Garcia*, 960 S.W.2d 221 (Tex. App.–Corpus Christi 1997)

RECEIVED
2015-DCL-02342
4/28/2015 5:19:04 PM
Eric Garza
Cameron County District Clerk
By Ezequiel Zepeda Deputy Clerk
5072360

CAUSE NO. 2015-DCL-2342

| | | |
|---|---|---|
| JUAN JOSE "JJ" ZAMORA, SR. and | § | IN THE DISTRICT COURT OF |
| MARTIN C. CANTU | § | |
| | § | |
| V. | § | 444TH JUDICIAL DISTRICT |
| | § | |
| CITY OF PORT ISABEL, TEXAS, | § | |
| MARIA DE JESUS GARZA, | § | |
| GUILLERMO TORRES, | § | |
| JOE E. VEGA, KEN PAXTON | § | |
| THE ATTORNEY GENERAL OF TEXAS | § | CAMERON COUNTY, TEXAS |

## TEMPORARY INJUNCTION ORDER

After considering Plaintiffs JJ Zamora's and Martin Cantu's application for a temporary injunctions, the pleadings, the evidence and the arguments of counsel, the court finds that: (1) Defendants voted to remove Plaintiffs as Port Isabel City Commissioners and will not allow Plaintiffs to continue to act as duly elected City Commissioners for Places 1 and 3 after April 13, 2015; and (2) Without this temporary injunction, Plaintiffs will lose their rights to be included in the ongoing business of city government as Port Isabel City Commissioners and will lose their right to vote on matters concerning Port Isabel city government. Therefore, the Court finds that harm is imminent to Plaintiffs if the court does not issue the temporary injunction and that Plaintiffs will be irreparably harmed because (1) Plaintiffs were duly elected to their respective offices as Port Isabel City Commissioners Places 1 and 3; (2) Defendants do not regard Plaintiffs as City Commissioners any longer and will not allow Plaintiffs to continue to act as City Commissioners; and (3) Defendants' actions in ousting Plaintiffs from their positions as Port Isabel City Commissioners deprives Plaintiffs from their interests, rights and entitlements as afforded to Plaintiffs under the law and Constitution of the State of Texas. The Court finds that the injury and harm to Plaintiffs absent this temporary injunction, will be immediate and

103

irreparable. Plaintiffs have established a probable right to recovery since Plaintiffs were removed by Defendants as city commissioners in violation of the City of Port Isabel Home Rule Charter, state law and in violation of their due process rights protected under the Texas Constitution.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that Defendants City of Port Isabel, Maria de Jesus Garza in her individual capacity and her capacity as Port Isabel City Commissioner Place 2, Guillermo Torres in his individual capacity and his capacity as Port Isabel City Commissioner Place 4 and Joe E. Vega in his individual capacity and his capacity as Mayor of the City of Port Isabel City are prohibited from: (1) removing Plaintiffs from their respective offices as Port Isabel City Commissioners for Places 1 and 3; (2) taking any actions to exclude Plaintiffs from participation in the business conducted by the Port Isabel City Commission; (3) withholding information from Plaintiffs which would in any way impede Plaintiffs' respective ability to carry out their respective duties as Port Isabel City Commissioners concerning the business conducted by the City of Port Isabel and the Port Isabel City Commission; (4) taking any action to replace Plaintiffs as Port Isabel City Commissioners Places 1 and 3; (5) declaring vacancies for Port Isabel City Commissioner Places 1 and 3, and (6) including as an agenda item on any future agenda, the removal of Plaintiffs from their respective offices as Port Isabel City Commissioners.

IT IS FURTHER ORDERED that final trial on the merits is set for August 28, 2015 at 10:00 a.m.

IT IS FURTHER ORDERED that this temporary injunction vacates and supersedes any prior orders of this Court.

104

The Court set the bond at $100.00.

The terms of this temporary injunction will continue until further order of this Court.

SIGNED on this the 12th day of May , 2015.

PRESIDING JUDGE

FILED 9:00 o'clock A M
**ERIC GARZA** - DISTRICT CLERK

JUN - 1 2015

DISTRICT COURT OF CAMERON COUNTY, TEXAS
BY_____ Deputy #19

105

## SECTION 1.04 EXTENSION OF BOUNDARIES.

The City Commission shall have the power by Ordinance to fix the boundary limits of the City of Port Isabel and to provide for the extension of boundary limits and the annexation of additional territory lying adjacent to said City, all pursuant to and in conformance with the procedure provided for in Article 970a of the Revised Civil Statutes of Texas, including all subsequent amendments thereto, and any other applicable State Statutes. Upon additional territory being so annexed, the inhabitants thereof shall be entitled to all rights, and privileges of other citizens; and shall be bound by the Acts, Ordinances, Resolutions and Regulations of the City of Port Isabel.

## SECTION 1.05 CONTRACTION OF BOUNDARIES.

Whenever there exists within the corporate limits of the City of Port Isabel any territory not suitable or necessary for City purposes, the City Commission may, in accordance with the laws of the State of Texas, discontinue said territory as a part of the City by Ordinance; provided, however, any territory so excluded from the City of Port Isabel shall remain liable for its prorata share of any debts incurred while said area was a part of the City, in accordance with law.

# ARTICLE II: MUNICIPAL GOVERNMENT

## SECTION 2.01 MAYOR AND COMMISSIONERS.

The governing body of the City of Port Isabel shall consist of the City Commission, which shall be composed of a Mayor, and four Commissioners, one of whom shall be designated as Commissioner No. 1, one as Commissioner No. 2, one as Commissioner No. 3, and one as Commissioner No. 4.

## SECTION 2.02 QUALIFICATIONS.

The Mayor and each Commissioner shall be citizens of the United States, and have resided in the State of Texas for a continuous period of two (2) years and in the City of Port Isabel, Texas, for a continuous period of one year, and have attained the age of twenty-one (21) years at the time of filing as a candidate for such position; and shall have the other qualifications as provided for candidates; in the State Election Code. The Mayor, Commissioners, and other officers and employees ~~shall not be indebted to the City, save and except for ad valorem taxes in the current year, and the previous year only, but with such ad valorem taxes and any other indebtedness owed to the City to be timely paid (otherwise constituting a disqualifying indebtedness hereunder)~~; shall not hold any other public office of emolument, except the office of Notary Public, and shall not be interested in the profits or emoluments or any contract, job, work or service for the City of Port Isabel, or interested in the sale or lease to or by the City of any property, real or personal. If the Mayor or any City Commissioner fails to maintain, the foregoing qualifications, or shall be absent from three consecutive regularly scheduled meetings, the City Commission shall at its next regularly scheduled meeting declare a vacancy to exist and shall fill said vacancy as set forth in Section 2.03 of this Charter. All

such qualifications and requirements shall be fully complied with by any prospective candidate for the position of Mayor or Commissioner at the time of filing for election. Any officer or employee of the City who shall cease to possess any of the qualifications herein required shall forthwith forfeit his or her office and any such contracts in which any officer or employee is or may become interested may be declared void by the City Commission. Any violation, of this Section shall be a misdemeanor, and on conviction for such violation, such office or employment shall be forfeited.

## SECTION 2.03 VACANCIES OF MAYOR OR COMMISSIONERS.

When a vacancy occurs in the City Commission, the remaining members of the City Commission shall, within ten (10) days, appoint a qualified person to fill the unexpired term. However, the City Commission shall not appoint more than one Commissioner in any twelve month period, and in the event that two vacancies occur within any twelve (12) month period, the City Commission shall call a special election to fill the second (or more) vacancies so occurring.

## SECTION 2.04 COMPENSATION OF MAYOR AND COMMISSIONERS.

The Mayor shall receive for his services the sum of One Hundred Dollars ($100.00) per month and each of the four City Commissioners shall receive the sum of Fifty Dollars ($50.00) per month for their services on the City Commission.

## SECTION 2.05 DUTIES AND POWERS OF MAYOR.

The Mayor of the City shall be the presiding officer of the Commission. The Mayor shall be entitled to vote as a member of the Commission, shall sign all ordinances, resolutions, and financial statements, and shall be the chief executive officer of the City and exercise all powers and perform all duties imposed upon the Mayor by this Charter and by the Ordinances of the City.

## SECTION 2.06 DUTIES AND POWERS OF MAYOR PRO-TEMPORE.

In the absence of the Mayor, a Mayor Pro-tempore shall act in the Mayor=s place and stead. At the next regular meeting of the City Commission after each election of a Mayor and/or Commissioners, one of such Commissioners shall be elected Mayor Pro-tempore by a majority vote of the Commissioners. In the absence of both the Mayor and the Mayor Pro-tempore, a presiding Mayor Pro-tempore shall be elected by a majority vote of the Commissioners present. In the absence of the Mayor, the Mayor Pro-tempore shall be charged with the same duties of the Mayor, shall be entitled to the same rights and privileges of the Mayor and shall be subject to the same restrictions and limitations of the Mayor as provided for in this Charter and by the laws of the State of Texas.

## SECTION 2.07 DUTIES AND POWERS OF COMMISSION.


960 S.W.2d 221
**(Cite as: 960 S.W.2d 221)**

Court of Appeals of Texas,
Corpus Christi.
THE CITY OF ALAMO and its Employees, Agents
and all Those Acting in Concert with them or at
their direction, Appellants,
v.
Ponciano GARCIA, Appellee.

No. 13–97–340–CV.
Nov. 25, 1997.
Rehearing Overruled Dec. 18, 1997.

After city commissioner was removed from board of commissioners and election was held for his seat, commissioner sued city to prevent seating of newly elected commissioner. The 92nd District Court, Hidalgo County, Edward Aparicio, J., granted former commissioner temporary injunction, and city appealed. The Court of Appeals, Seerden, C.J., held that: (1) after commissioner's seat was automatically forfeited for absenteeism from board meetings, postdeprivation hearing before calling of election for replacement commissioner was sufficient to protect former commissioner's due process rights, and (2) notice provision of Open Meetings Act did not apply to forfeiture of seat on city board of commissioners for absenteeism from board meetings.

Reversed and rendered.

West Headnotes

**[1] Municipal Corporations 268 ☞65**

268 Municipal Corporations
268III Legislative Control of Municipal Acts, Rights, and Liabilities
268k65 k. Local Legislation. Most Cited Cases
Home rule city, which is governed by its city charter, looks to legislature only to ascertain whether legislature has limited city's constitutional

power.

**[2] Municipal Corporations 268 ☞159(6)**

268 Municipal Corporations
268V Officers, Agents, and Employees
268V(A) Municipal Officers in General
268k153 Removal
268k159 Proceedings and Review
268k159(6) k. Review. Most Cited Cases
Courts cannot interfere to protect person from removal from municipal office by man or body of men to whom the power to remove is given by law.

**[3] Municipal Corporations 268 ☞104**

268 Municipal Corporations
268IV Proceedings of Council or Other Governing Body
268IV(A) Meetings, Rules, and Proceedings in General
268k104 k. Appeal from Decisions. Most Cited Cases
Court may review actions of city board of commissioners for home rule city for abuse of discretion and due process. U.S.C.A. Const.Amend. 14 § 1; Vernon's Ann.Texas Const. Art. 1, § 19.

**[4] Constitutional Law 92 ☞3875**

92 Constitutional Law
92XXVII Due Process
92XXVII(B) Protections Provided and Deprivations Prohibited in General
92k3875 k. Factors Considered; Flexibility and Balancing. Most Cited Cases
(Formerly 92k251.5, 92k251.1)

**Constitutional Law 92 ☞3912**

92 Constitutional Law
92XXVII Due Process
92XXVII(B) Protections Provided and Deprivations Prohibited in General

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

960 S.W.2d 221
**(Cite as: 960 S.W.2d 221)**

92k3912 k. Duration and Timing of Deprivation; Pre- or Post-Deprivation Remedies. Most Cited Cases

(Formerly 92k251.6)

Pre-deprivation hearing is not required in every case; rather, process required is measured by balancing of three factors: (1) private interest that will be affected by official action; (2) risk of erroneous deprivation of such interest through procedures used, and probable value, if any, of additional or substitute procedural safeguards; and (3) government's interest, including function involved and fiscal and administrative burdens that additional or substitute procedural requirement would entail. U.S.C.A. Const.Amend. 14 § 1; Vernon's Ann.Texas Const. Art. 1, § 19.

**[5] Constitutional Law 92 4174**

92 Constitutional Law
  92XXVII Due Process
    92XXVII(G) Particular Issues and Applications
      92XXVII(G)7 Labor, Employment, and Public Officials
        92k4174 k. Elected Officials. Most Cited Cases

(Formerly 92k278.4(5))

**Municipal Corporations 268 159(4)**

268 Municipal Corporations
  268V Officers, Agents, and Employees
    268V(A) Municipal Officers in General
      268k153 Removal
        268k159 Proceedings and Review
          268k159(4) k. Notice and Hearing. Most Cited Cases

After city commissioner's seat was automatically forfeited for absenteeism from meetings of board of commissioners, postdeprivation hearing before calling of election for a replacement commissioner was sufficient to protect former commissioner's due process rights. U.S.C.A. Const.Amend. 14 § 1; Vernon's Ann.Texas Const. Art. 1, § 19.

**[6] Administrative Law and Procedure 15A 124**

15A Administrative Law and Procedure
  15AII Administrative Agencies, Officers and Agents
    15Ak124 k. Meetings in General. Most Cited Cases

In order for notice provision of Open Meetings Act to apply to governmental body's meeting, governmental body must act, discuss, or do public business. V.T.C.A. Government Code §§ 551.001(4), 551.041.

**[7] Municipal Corporations 268 89**

268 Municipal Corporations
  268IV Proceedings of Council or Other Governing Body
    268IV(A) Meetings, Rules, and Proceedings in General
      268k89 k. Calling and Notice of Meeting. Most Cited Cases

Notice provision of Open Meetings Act did not apply to forfeiture of seat on city board of commissioners for absenteeism from board meetings; city charter provision disqualifying commissioner was self-enacting and did not require action on part of board. V.T.C.A. Government Code §§ 551.001(4), 551.041.

**[8] Municipal Corporations 268 89**

268 Municipal Corporations
  268IV Proceedings of Council or Other Governing Body
    268IV(A) Meetings, Rules, and Proceedings in General
      268k89 k. Calling and Notice of Meeting. Most Cited Cases

**Municipal Corporations 268 92**

268 Municipal Corporations
  268IV Proceedings of Council or Other Governing Body
    268IV(A) Meetings, Rules, and Proceedings

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

960 S.W.2d 221
**(Cite as: 960 S.W.2d 221)**

in General

268k92 k. Rules of Procedure and Conduct of Business. Most Cited Cases

Although notice provision of Open Meetings Act did not apply to forfeiture of seat on city board of commissioners for absenteeism from board meetings, Act applied to subsequent hearing at which offending commissioner defended his absences and remainder of board voted on whether to excuse his absences. V.T.C.A. Government Code §§ 551.001(4), 551.041.

**\*222** Neil E. Norquest, Chris A. Brisack, Norquest & Brisack, James E. Darling, Kevin D. Pagan, McAllen, for appellants.

Aaron Pena, Jr., Edinburg, Keith C. Livesay, McAllen, for appellee.

Before SEERDEN, C.J., and FEDERICO G. HINOJOSA, Jr. and CHAVEZ, JJ.

**OPINION**

SEERDEN, Justice.

The City of Alamo, appellant, appeals the trial court's decision to issue a temporary injunction prohibiting it from swearing-in a newly elected commissioner. We reverse the trial court's decision and order that the injunction be dissolved.

[1] The City of Alamo is a home rule city governed by its city charter. A home rule city looks to the legislature only to ascertain whether the legislature has limited the city's constitutional power. *Garza v. Garcia,* 785 S.W.2d 421, 422 (Tex.App.—Corpus Christi 1990, writ denied). "A grant of power of removal from office is strictly construed and whatever is not given in unequivocal terms is withheld and not implied." *Id.* This Court can take judicial notice of the city charter, which is in the record. *See Id.* Article II, section 6 of the Alamo City Charter provides, in relevant part:

A mayor or Commissioner shall forfeit his office if the Mayor or Commissioner:

(4) fails to attend four (4) consecutive regular meetings of the Board of Commissioners unless he is excused by unanimous vote of the Board of Commissioners, the vote to be taken at the end of the fourth meeting; or

(5) fails to attend eight (8) regular meetings of the Board of Commissioners in any anniversary year of such person, unless he is excused by unanimous vote of the Board of Commissioners, the vote to be taken at the end of the eighth meeting ...

The City of Alamo alleges Place 4 Commissioner Ponciano Garcia missed four consecutive meetings of the Board, and missed eight Board meetings in one anniversary year. Thus, pursuant to the charter, Garcia's seat was automatically forfeited. On January 7, 1997, the Board of Commissioners (the Board) took a vote on whether Garcia's absences would be excused. The Board voted not to excuse Garcia.

On January 21, 1997, after allowing Garcia an opportunity to explain his absences, a majority of the Board members, once again, **\*223** voted not to excuse Garcia's absences. An election was thereafter called for Place 4, i.e., former Commissioner Garcia's seat.

On April 11, 1997, Garcia filed an original petition claiming that he had not forfeited his city commission seat, and seeking to enjoin the election of any individual to that seat. Without notice to appellant, a restraining order enjoining the election was entered on April 14, 1997. This order, under protest of appellant, was subsequently withdrawn. *See City of McAllen v. Garza,* 869 S.W.2d 558, 560 (Tex.App.—Corpus Christi 1993, writ denied) (Texas law does not allow enjoining elections).

Garcia submitted himself as a candidate for the vacated seat on the city commission. On May 3, 1997, Marcelinos Medina defeated former Commissioner Garcia in the election for Place 4. On May 6, 1997, Garcia filed his first amended petition re-

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

questing declaratory and injunctive relief relating to his forfeiture and the seating of Medina as commissioner. The trial court, without notice to appellant or a hearing, granted Garcia's request for a temporary restraining order thereby prohibiting appellant from swearing-in the newly elected commissioner. At that time, the trial court set a hearing on Garcia's motion for a temporary injunction.

On May 30, 1997, after the hearing on Garcia's motion, the trial court, finding the actions of the Alamo City Commissioners unreasonable, orally granted a temporary injunction enjoining appellant from seating anyone in Place 4. A written order was signed by the trial court on June 17, 1997, which added, as further grounds for the injunction, that the self-enacting forfeiture provision violated the due process requirements of, presumably, the Texas and/or United States Constitutions. The trial court also found the City's charter to be in conflict with the Texas Open Meetings Act.

Appellant's request for emergency and mandamus relief was denied by this Court. Appellant, pursuant to TEX. CIV. PRAC. REM.CODE ANN. § 51.014(4) (Vernon 1997), brings this interlocutory appeal of an order granting a temporary injunction.

In its first point of error, appellant complains that the trial court lacked the authority to interfere, via injunctive relief, with the self-enacting forfeiture provision contained within the Alamo City Charter. Specifically, appellant argues that although Garcia was entitled to judicial review of the Board's decision not to excuse his absences, injunctive relief was not available.

[2][3] Texas courts, in recognition of the autonomy and separate powers of municipal legislatures, "will not interfere to protect a person from removal from office by a man or body of men to whom the power to remove is given by law." *Huntress v. McGrath,* 946 S.W.2d 480, 484–85 (Tex.App.—Fort Worth 1997, n.w.h.)(quoting *Callaghan v. Tobin,* 40 Tex.Civ.App. 441, 90 S.W. 328, 330 (1905, writ ref'd)). The courts will,

however, be able to review a city council's (or commission's) actions for abuse of discretion and due process. *Garza,* 785 S.W.2d at 422.

The co-existence of these two rules was best summed up by the San Antonio Court of Appeals in *White v. Bolner,* 223 S.W.2d 686 (Tex.Civ.App.—San Antonio 1949, writ ref'd). In *White,* Bolner and others sued White as the mayor of the city of San Antonio. Bolner and others prayed for, and were granted, a temporary injunction "restraining A.C. White as Mayor of City of San Antonio, from taking any other further action to oust plaintiffs ... as commissioners of San Antonio Housing Authority, and also enjoining [the replacement commissioners] from acting as commissioners of the San Antonio Housing Authority." *Id.* at 687. In reversing and setting aside the injunction, the court stated that although Bolner and others were entitled to judicial review, "the right to a review by a judicial body does not entitle appellees to a temporary injunction, the effect of which is to perpetuate them in office pending that review." *Id.* at 688. In conclusion, the court stated that the mayor,

... [h]aving jurisdiction and having made an order ousting appellees, this order must be presumed to be correct and must be given effect until the contrary is shown. While appellees have a right to a judicial review of this matter, they do not have the right to have this action by the mayor **\*224** suspended and rendered inoperative pending their judicial review of the matter.

*Id.* at 688–89. *See also Riggins v. City of Waco,* 100 Tex. 32, 93 S.W. 426 ( 1906)(Texas Supreme Court concluded that it could not interfere with or disregard the action of the city council in removing the mayor from office other than inquiring into whether the council exceeded its lawful authority in the attempted removal so that its action may be considered a nullity); *Huntress,* 946 S.W.2d at 486 (court, in granting mandamus relief, held the trial court abused its discretion in enjoining hearings conducted by city aldermen for removal of mayor);

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

*Cosmo Life Insurance Co. v. State Board of Insurance,* 319 S.W.2d 162, 165 (Tex.Civ.App.—Austin 1958, no writ)(citing *White v. Bolner* in support of its holding that Cosmo was entitled to judicial review of Board's order regulating issuance of policies but that "such review does not entitle them to a temporary injunction the effect of which is to perpetuate regulations, and rates ...").

As appellant points out, the Board in the case at hand acted within their authority as provided under the city charter. Therefore, appellant argues, based on the caselaw cited above, Garcia was not entitled to injunctive relief.

We do not question the authorities cited by appellant nor the proposition that the actions of the Board, when acting pursuant to its lawful authority, are not subject to injunctive relief. However, in the cases cited by appellant, the actors were acting pursuant to "lawful authority." That is, the provisions acted upon, whether they be city ordinances or other statutory authority, were either not challenged or were found "lawful."

For example, in *White v. Bolner,* 223 S.W.2d at 688–89 (discussed above), the San Antonio Court of Appeals first overruled appellees' contention that the statutory authority upon which Mayor White relied upon in ousting appellees was unconstitutional and void because it failed to provide for judicial review. Only then did the court examine the mayor's compliance with the statute and hold that appellees, while entitled to judicial review, were not entitled to injunctive relief. It appears from the language of the opinion that if the statute was held unconstitutional as argued by appellees, the injunctive relief granted by the trial court would have been affirmed. *Cf. Garza,* 785 S.W.2d at 423 ("the judgment of a governing body having discretionary power would not be reversed unless the body's action was *illegal,* unreasonable, or arbitrary) (emphasis added)(citing *Lewis v. City of Fort Worth,* 126 Tex. 458, 89 S.W.2d 975 (1936)); *Huntress,* 946 S.W.2d at 485 ("the courts ... may inquire whether or not the council exceeded its *lawful authority* in the attempted

removal ...")(emphasis added) (quoting *Riggins v. City of Waco,* 100 Tex. 32, 93 S.W. 426, 427 ( 1906)); *Industrial Accident Board v. O'Dowd,* 298 S.W.2d 657, 658–59 (Tex.Civ.App.—Austin) (affirming temporary injunction preventing Board from barring plaintiffs from practicing before Board based on unconstitutionality of statute pursuant to which Board acted), *rev'd,* 157 Tex. 432, 303 S.W.2d 763 (1957)(reversed and dissolved temporary injunction finding statute pursuant to which Board acted to be constitutional); *City of Fort Worth v. McDonald,* 293 S.W.2d 256, 259 (Tex.Civ.App.—Fort Worth 1956, writ ref'd n.r.e.) (enforcement of unconstitutional city ordinance properly enjoined).

Therefore, it appears to us as though injunctive relief is available where the Board acts pursuant to "unlawful" authority. In this regard, the trial court, upon finding the city charter violative of due process considerations and the Open Meetings Act, could have properly enjoined appellant.

Appellant, however, in his second point of error and his reply brief, argues that the automatic forfeiture provision of the city charter does not violate due process or the Open Meetings Act. We agree.

DUE PROCESS

The United States Constitution provides: "[N]or shall any State deprive any person of life, liberty, or property, without due process of law ..." U.S. Const. Amend. XIV, § 1. The due process provision of the Texas Constitution states: "No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disenfranchised, except by the due course of **\*225** the law of the land." TEX. CONST. art. I, § 19. Despite the textual differences between the two provisions, the Texas Supreme Court has concluded there is no meaningful distinction between the provisions. *University of Texas Medical School at Houston v. Than,* 901 S.W.2d 926, 929 (Tex.1995). Therefore, we consider federal due process claims and State due course claims together using contem-

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

960 S.W.2d 221
**(Cite as: 960 S.W.2d 221)**

porary federal due process interpretations. *Id.*

When analyzing due process, we apply a two-part test: (1) we must determine whether appellee had a liberty or property interest entitled to procedural due process; and (2) if so, we must determine what process is due. *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 428, 102 S.Ct. 1148, 1153–54, 71 L.Ed.2d 265 (1982); *Than,* 901 S.W.2d at 929. Assuming arguendo Garcia had a sufficient liberty or property interest in his position as city commissioner, we find the required process was provided.

[4] Due process at a minimum requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner. *Than,* 901 S.W.2d at 930 (citing *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 901–02, 47 L.Ed.2d 18 (1976)). What process is due is a "flexible" concept depending on the facts and circumstances of the particular case. *Mathews,* 424 U.S. at 334, 96 S.Ct. at 902; *Than,* 901 S.W.2d at 930. In general, there is no rule that a "pre-deprivation" hearing is required in every case. *Chaney v. Suburban Bus. Div. Of Regional Transportation Authority,* 52 F.3d 623, 628 (7th Cir.1995). Rather, the process required is measured by the balancing of three factors: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Mathews,* 424 U.S. at 335, 96 S.Ct. at 902–03

It is undisputed that Garcia received no notification that his office was to be vacated other than his presumed knowledge of his own absences from the board meetings and of the requirements of the city charter. There was no hearing conducted prior to his automatic forfeiture. There is nothing in the city charter, however, which expressly forecloses the opportunity to be heard regarding the facts upon which his seat was forfeited. The presumption of

the constitutionality of every statute or ordinance is accompanied by a presumption that it was drafted with constitutional requisites in mind. TEX. GOV'T CODE ANN. § 311.021 (Vernon 1988); *Texas Employment Com'n v. Remington York, Inc.,* 948 S.W.2d 352, 357 (Tex.App.—Dallas 1997, n.w.h.). Presumably, the City of Alamo, in drafting its charter, intended that Garcia be afforded an opportunity to be heard, albeit after his seat was declared vacant. *House of Tobacco, Inc. v. Calvert,* 394 S.W.2d 654, 658 (Tex.1965)(although statute does not provide for notice and a hearing, such is not unconstitutional since these provisions may be by implication incorporated into the statute unless the statute expressly provides otherwise) (citations omitted); *Limon v. State,* 947 S.W.2d 620, 626–27 (Tex.App.—Austin 1997, no pet. h.)("[T]he fact that a statute does not expressly provide for notice and hearing does not render it unconstitutional.") This is further evidenced by the fact that Garcia was, upon request, given an opportunity to explain his absences to the Board on January 21, 1997. The only question remaining is whether this post-deprivation hearing was sufficient to comply with due process.

[5] Applying the three *Mathews* factors, we conclude that a post-deprivation hearing was sufficient to protect Garcia's due process rights. Although Garcia, being subject to an automatic forfeiture provision, loses the right to challenge the applicability of the provision prior to forfeiture, such an interest pales in comparison to other interests. For example, when a board member effectively abandons the duties of his office, the need for the establishment of the vacancy becomes urgent. The citizens of the city were not being represented as they were entitled to be, with a full Board of Commissioners. Additionally, the issue of the application of the charter **\*226** provision in question is one of simple resolution. Determining whether a commissioner misses four consecutive meetings, or eight meetings in a given year, is not likely to be subject to factual dispute. Accordingly, we conclude that Garcia was afforded due process.

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

960 S.W.2d 221
**(Cite as: 960 S.W.2d 221)**

OPEN MEETINGS ACT

As part of the basis in awarding injunctive relief, the trial court found that the charter provisions in question "were incapable of being satisfied and simultaneously comply with the Open Meetings Act...." We disagree.

[6] The Open Meetings Act was enacted in 1967 to assure that the public has the opportunity to be informed about the transactions of public business. *City of San Antonio v. Fourth Court of Appeals,* 820 S.W.2d 762, 765 (Tex.1991); *Acker v. Texas Water Com'n,* 790 S.W.2d 299, 300 (Tex.1990) (quoting Acts 1967, ch.271, § 7, 1967 Tex. Gen. Laws 597, 598). The act provides:

A governmental body shall give written notice of the date, hour, place, and subject of each meeting held by the governmental body.

TEX. GOV'T CODE ANN. § 551.041 (Vernon 1994). A "meeting" includes "a deliberation ... during which public business or public policy over which the governmental body has supervision or control is discussed or considered or during which the governmental body takes formal action." TEX. GOV'T CODE ANN. § 551.001(4) (Vernon 1994). From this definition and from an examination of the caselaw applying the Open Meetings Act, it is clear that the governmental body must *act, discuss,* or *do* in order for the notice provision of the Open Meetings Act to apply. *See Acker,* 790 S.W.2d at 300 (purpose of Act is to assure that public has the "opportunity to be informed concerning the transactions of public business."); *Markowski v. City of Marlin,* 940 S.W.2d 720, 725 (Tex.App.—Waco 1997, no writ)(notice sufficient under act if it would alert reader to fact that some *action* would be taken on certain topic); *Rettberg v. Texas Dept. Of Health,* 873 S.W.2d 408, 411, 413 (Tex.App.—Austin 1994, no writ)(issue is whether notice of governmental meeting was "sufficiently specific to alert the interested public that some *discussion* and *action* could occur ..."); *Point Isabel Indep. Sch. Dist. v. Hinojosa,* 797 S.W.2d 176, 180 (Tex.App.—Corpus Christi 1990, writ denied)

(more important the governmental *action,* the more specific the notice must be).

[7] The city charter provision in question, however, does not require action on the part of the Board. Rather, the charter provision which disqualified Garcia from holding his position was self-enacting.[FN1] Upon the occurrence of his fourth consecutive and eighth absence, his disqualification from office was automatic without the need for further action by the remainder of the commission. The Board did not terminate Garcia's position; Garcia forfeited his position. Therefore, the provisions of the Open Meetings Act are inapplicable.

> FN1. Under such an automatic forfeiture provision, only the occurrence of the disqualifying event itself, not the reasons therefore, are relevant to whether the provision applies. *See Harrison v. Chesshir,* 316 S.W.2d 909, 914 (Tex.Civ.App.—Amarillo 1958), *rev'd on other grounds,* 159 Tex. 359, 320 S.W.2d 814 (1959); *Prince v. Inman,* 280 S.W.2d 779, 781 (Tex.Civ.App.—Beaumont 1955, no writ)(only fact susceptible to judicial review was determined to be whether disqualifying event occurred).

[8] The provisions of the Open Meetings Act were, however, applicable to the subsequent hearing (see discussion on due process) at which Garcia defended his absences, and the remainder of the Board voted on whether to excuse Garcia's absences. There is no argument by either party that the requirements of the Open Meetings Act were not met in relation to that hearing, nor would such affect our holding that the city charter provisions in question are not inherently inconsistent with the notice provisions of the Open Meetings Act.

CONCLUSION

Accordingly, because due process considerations are not violated, and because the city charter does not conflict with the Open Meetings Act, we find the city charter to be "lawful" authority. There-

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

960 S.W.2d 221
**(Cite as: 960 S.W.2d 221)**

fore, because it is **\*227** uncontested that the Board acted within the confines of the charter provisions, injunctive relief is not available. (See above).

We sustain appellant's first and second points of error, reverse the judgment of the trial court, and render judgment that the order of injunction be dissolved. All other points need not be discussed. TEX.R.APP. P. 47.1.

Tex.App.–Corpus Christi,1997.
City of Alamo v. Garcia
960 S.W.2d 221

END OF DOCUMENT

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.